*In re* A MINOR (The People of the State of Illinois, Petitioner-Appellee, v. The Champaign News-Gazette, Appellant).—*In re* A MINOR (The People of the State of Illinois, Petitioner-Appellee, v. The Champaign News-Gazette, Appellant).

Fourth District   Nos. 4—90—0167, 4—90—0168 cons.

Opinion filed November 15, 1990.

STEIGMANN, J., dissenting.

Traci E. Nally, of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, for appellant.

No brief filed for the People.

Stephen R. Pacey, of Pacey & Pacey Lawyers, P.C., of Paxton, guardian *ad litem*.

JUSTICE McCULLOUGH delivered the opinion of the court:

This is an interlocutory appeal by the Champaign News-Gazette, Inc. (News), from an order excluding the News from the juvenile proceedings involving the two minors in these cases. The News argues the trial court erred in excluding its reporters from the proceeding pursuant to section 1—5 of the Juvenile Court Act of 1987 (Act) (Ill. Rev. Stat. 1989, ch. 37, par. 801—5). We affirm in part and reverse in part.

The docket entries in the record reveal the two minors, who were the victims of physical and sexual abuse at the hands of a parent, were taken into shelter care on February 23, 1989. According to the News, one of its reporters was in the courtroom on March 13, 1989, the day scheduled for the adjudicatory hearing for both minors, to report on the proceedings. Upon identifying himself to the trial judge as a reporter for the News, he was ordered to leave the courtroom. The re-

porter's request for an immediate hearing on the exclusion order was denied.

The News filed a motion for reconsideration of the exclusion order. At a hearing on April 18, 1989, the trial judge stated the court had an obligation to protect minors and there is a policy of confidentiality embodied in section 1—5 of the Act with respect to juvenile proceedings. The judge further noted section 1—5 of the Act provides the media may be admitted to proceedings if, in the opinion of the court, they have a direct interest in the case. Further, the media should make an advance application for admission to juvenile proceedings. Finally, the judge stated the News could be admitted to the proceedings if it agreed not to further reveal the identity of the minors.

Following the hearing on April 18, 1989, an order entitled "CONFIDENTIALITY ORDER ENTERED PURSUANT TO CHAPTER 37, SECTION [1—8] AND SECTION [1—5(6)]" was filed on April 20, 1989. The order stated, pursuant to section 1—5(6) of the Act (Ill. Rev. Stat. 1989, ch. 37, par. 801—5(6)), "all persons and agencies present in the court for hearings [regarding the two minors] are prohibited and enjoined from further disclosing the minor[s'] identit[ies]." Further, pursuant to section 1—8 of the Act (Ill. Rev. Stat. 1989, ch. 37, par. 801—8), all parties to the proceeding were prohibited from disclosing the content or substance of any court record involving the two minors. A written order addressing the issues raised by the News and setting forth the court's decision announced in court on April 18 was filed on January 31, 1990. The News appeals from the order entered on January 31, 1990.

The jurisdiction of this court for appeal purposes is based upon the trial court's order of January 31, 1990. The issues set forth in the appellant's brief are whether advance application to the trial court must be made before being admitted to juvenile court proceedings and whether the News may be excluded from the proceedings if it discloses the identity of the juveniles, even if identity is obtained from other sources. The appellant addresses the January 31, 1990, order in its brief. The failure of the trial court to make specific findings at the March 13, 1989, hearing is waived. We, therefore, address the issues as they pertain to the January 31, 1990, order.

The parties' arguments focus on section 1—5(6) of the Act, which reads as follows:

> "The general public except for the news media and the victim shall be excluded from any hearing and, except for the persons specified in this Section, only persons, including representatives of agencies and associations, who in the opinion of the court

have a direct interest in the case or in the work of the court shall be admitted to the hearing. However, the court may, for the minor's protection and for good cause shown, prohibit any person or agency present in court from further disclosing the minor's identity." (Ill. Rev. Stat. 1989, ch. 37, par. 801—5(6).) The News contends this section evidences that juvenile proceedings are open to the media. Specifically, the News argues section 1—5(6) clearly excepts the news media and the victim from the class of the general public. The News argues the term "this Section" refers only to section 1—5(6), not section 1—5. Relying on this analysis of the language in section 1—5(6), the News maintains it is excepted *not only* from the group of the general public *but also* from those persons whom the court may exclude if it finds they do not have a direct interest in the case or the work of the court. The News relies on *In re Jones* (1970), 46 Ill. 2d 506, 263 N.E.2d 863, which considered section 1—20(6) of the Juvenile Court Act (Ill. Rev. Stat. 1969, ch. 37, par. 701—20(6)), predecessor to section 1—5(6), for support.

The News also argues that given the language of section 1—5(6) and the history of juvenile proceedings in Illinois, it has a first amendment right of access to juvenile proceedings. Relying on *Press-Enterprise Co. v. Superior Court* (1986), 478 U.S. 1, 92 L. Ed. 2d 1, 106 S. Ct. 2735, the News contends it can only be excluded after a finding that there is an overriding interest essential to preserving higher values. The News further maintains the trial judge's requirement in this case of an advance application for admission has no basis in the Act and is unconstitutional. Finally, the News argues the threat of exclusion, if it discloses the minor's identity, constitutes a prior restraint of the press.

The guardian *ad litem* for the minors argues the trial court correctly found three classes of persons are mentioned in section 1—5, which concerns "Rights of parties to proceedings": (1) the minor, his parents, guardian or custodian, who are parties respondent; (2) the general public except for the news media and the victim; and (3) except for those persons mentioned in section 1—5, those persons, in the court's opinion, with a direct interest in the case or work of the court. The guardian contends the News' reliance on *Jones* is misplaced and, further, that historically juvenile proceedings have not been open to the general public.

The guardian distinguishes the cases relied upon by the News by pointing out that it is undisputed that the News did not obtain the minors' identities through common reportorial techniques. Further, the minors involved in these proceedings are *victims* of physical and sex-

ual abuse, unlike the delinquent minors or criminal defendants involved in the cases the News relies on. Finally, the guardian points out that the United States Supreme Court cases addressing freedom of the press with regard to judicial proceedings have yet to consider this right with regard to juvenile proceedings involving abused or neglected children.

In its reply brief, the News maintains it is not arguing it has an absolute right to be admitted to all juvenile proceedings, or that the well-being of the minors herein is not compelling enough to justify closure of the proceedings. Rather, the News argues that because no request for closure or factual findings supporting closure were made in these cases, the order must be reversed.

■■■ We first address the News' construction of section 1–5(6) of the Act. Statutes should be evaluated as a whole, and each provision should be construed in connection with every other section and in light of the statute's general purpose. (*Peoples Gas Light & Coke Co. v. Illinois Commerce Comm'n* (1987), 165 Ill. App. 3d 235, 247, 520 N.E.2d 46, 54.) A reading of section 1–5 in its entirety does not support the News' analysis that the term "this Section" in section 1–5(6) refers only to section 1–5(6). In section 1–5(1) of the Act (Ill. Rev. Stat. 1989, ch. 37, par. 801–5(1)), the same term, "this Section," is used. To confine the term "this Section" to the paragraph it appears in does not comport with the principles of statutory construction. We find the News' analysis of the language in section 1–5(6) to be without merit.

We now consider the first amendment right of freedom of the press regarding juvenile proceedings. Our analysis begins first with the decisions of the United States Supreme Court on freedom of the press in judicial proceedings. The Court has held that a State may not prohibit a newspaper from publishing any information regarding criminal defendants, juvenile delinquents, and crime victims where the information had been obtained through common reportorial techniques. (*Cox Broadcasting Corp. v. Cohn* (1975), 420 U.S. 469, 43 L. Ed. 2d 328, 95 S. Ct. 1029; *Nebraska Press Association v. Stuart* (1976), 427 U.S. 539, 49 L. Ed. 2d 683, 96 S. Ct. 2791; *Oklahoma Publishing Co. v. District Court* (1977), 430 U.S. 308, 51 L. Ed. 2d 355, 97 S. Ct. 1045; *Globe Newspaper Co. v. Superior Court* (1982), 457 U.S. 596, 73 L. Ed. 2d 248, 102 S. Ct. 2613.) Further, in *The Florida Star v. B.J.F.* (1989), 491 U.S. 524, 105 L. Ed. 2d 443, 109 S. Ct. 2603, the Court stated the publication of information lawfully obtained and of public significance cannot be constitutionally punished, absent a need to further a State interest of the highest order. The rationale underlying the Court's decisions is the recognized constitutional right of access to

criminal trials, embodied in the first amendment, which the press and the general public enjoy. (See *Richmond Newspapers, Inc. v. Virginia* (1980), 448 U.S. 555, 65 L. Ed. 2d 973, 100 S. Ct. 2814; *Globe,* 457 U.S. at 603, 73 L. Ed. 2d at 255, 102 S. Ct. at 2618.) This right of access is not absolute. (*Nebraska,* 427 U.S. at 570, 49 L. Ed. 2d at 704, 96 S. Ct. at 2808.) The State may deny access but its justification for doing so must be backed by a compelling governmental interest. Further, the denial must be narrowly tailored to serve that interest. *Globe,* 457 U.S. at 607, 73 L. Ed. 2d at 257, 102 S. Ct. at 2620.

The Court had stated, in two of its decisions to date, that its holdings should be confined to the facts of the case and the issue presented. Specifically, in *Globe,* the court held that a State statute *mandating* closure of criminal proceedings when a minor victim of a sex offense was testifying was too restrictive because it did not give discretion to trial courts to determine on a case-by-case basis whether closure is called for. Thus, the court left open the question of whether a State statute giving discretion to trial judges to close criminal proceedings in certain cases would survive a constitutional challenge. In her concurring opinion in *Globe,* Justice O'Connor stated:

"I interpret neither *Richmond* \*\*\* nor the Court's decision today to carry any implications outside the context of criminal trials." (*Globe,* 457 U.S. at 611, 73 L. Ed. 2d at 260, 102 S. Ct. at 2622 (O'Connor, J., concurring).)

In *Florida Star,* the Court rejected an invitation to hold that truthful publication of information may never be punished and stated:

"Our cases have carefully eschewed reaching this ultimate question, mindful that the future may bring scenarios which prudence counsels our not resolving anticipatorily." *The Florida Star,* 491 U.S. at 532, 105 L. Ed. 2d at 455, 109 S. Ct. at 2608.

The Supreme Court has yet to determine whether the constitutional right of access in criminal trials extends to juvenile proceedings. However, several State courts have considered the issue. In *In re J.S.* (1981), 140 Vt. 458, 438 A.2d 1125, at issue was a State statute prohibiting the general public from juvenile proceedings and prohibiting publicity regarding the proceedings except with the consent of the minor and his parent. The Vermont Supreme Court determined the *Richmond* right of access to criminal trials did not extend to juvenile proceedings involving delinquent minors. In so holding, the court reasoned that juvenile proceedings have traditionally been closed and the statute evidenced the legislature's intent that these proceedings be closed. Further, the court noted the purposes served by open criminal trials were inapplicable to juvenile proceedings, considered rehabilitative and

not criminal in nature. Finally, the court stated the confidentiality inherent in juvenile proceedings overrides any first amendment rights.

In *Edward A. Sherman Publishing Co. v. Goldberg* (R.I. 1982), 443 A.2d 1252, the Rhode Island Supreme Court determined the trial court's order barring the press from juvenile proceedings, where the name of the minor was lawfully obtained by the press, violated the decisions of the United States Supreme Court in *Oklahoma Publishing* and *Smith v. Daily Mail Publishing Co.* (1979), 443 U.S. 97, 61 L. Ed. 2d 399, 99 S. Ct. 2667. However, in considering the constitutionality of a statute barring the general public from court hearings in juvenile proceedings, the court reasoned the press had no constitutional right of access to these proceedings under the United States Constitution and, therefore, the State legislature could exclude the press by statute from the proceedings.

In *Florida Publishing Co. v. Morgan* (1984), 253 Ga. 467, 322 S.E.2d 233, a Georgia statute excluded the general public from delinquency, deprivation, and unruliness hearings in juvenile court. The Georgia Supreme Court upheld the constitutionality of the exclusion statute, reasoning there was no historically based constitutional presumption of openness in juvenile proceedings. The court further opined that the presumption of closed proceedings, involving juveniles, is not conclusive and the press must be given an opportunity to show the juvenile's interest in a closed proceeding is not "overriding" or "compelling."

In *Associated Press v. Bradshaw* (S.D. 1987), 410 N.W.2d 577, the South Dakota Supreme Court, noting first the media's right of access to juvenile proceedings was not compelled by the United States Constitution, stated the media had a qualified right of access under a State statute. The statute at issue in *Bradshaw* provided the general public was to be admitted to juvenile proceedings except when the child, parent, or attorney requested a private hearing. In that event, the trial judge was given discretion to admit those persons with " '*** *a direct interest in the case, witnesses, officers of the court and news media representatives.*' " (Emphasis in original.) (*Bradshaw*, 410 N.W.2d at 579, quoting S.D. Codified Laws Ann. §26—8—32 (1984).) The court stated the statute gave judges discretion to admit one, all, or a combination of the enumerated parties and the press had no greater right than that of the general public under the statute. The court further noted the qualified right of access required the balancing of first amendment rights with the State's interest in preserving the juvenile's anonymity and in protecting the juvenile.

In *In re N.H.B.* (Utah App. 1989), 769 P.2d 844, the Utah Court of

Appeals noted that while the United States Supreme Court has not squarely addressed the issue of public access to juvenile proceedings, it had repeatedly "evinced an appreciation for the purposes served by closure." (*N.H.B.*, 769 P.2d at 848.) The Utah statute at issue in *N.H.B.* provided the general public was excluded from juvenile proceedings except where a petition was presented alleging the commission of a crime by a juvenile which would be a felony if committed by an adult. The court concluded the statute, which presumed the proceedings were closed, was constitutional under the United States Constitution and the Utah State Constitution.

Recently, in *In re T.R.* (1990), 52 Ohio St. 3d 6, 556 N.E.2d 439, the Ohio Supreme Court considered a State statute which provided that the general public may be excluded and only those persons who have a direct interest in the case may be admitted to juvenile proceedings. The court determined juvenile proceedings are not presumptively open and the statute allowed trial judges to close juvenile proceedings—but only after hearing evidence on the issue and finding (1) there was a reasonable and substantial basis for believing that access would endanger the child or endanger the fairness of the proceedings; and (2) the potential harm outweighed the benefits of public access. (*T.R.*, 52 Ohio St. 3d at 7, 556 N.E.2d at 442.) The proceedings before the court in *T.R.* involved the legal custody of a minor. The trial judge closed the proceedings to the media, sealed the court records, and issued a gag order to the parties and their counsel. The court upheld the validity of the closure order, reasoning the trial court's analysis that the harm to the child outweighed the benefits of access was not an abuse of discretion.

We are persuaded by the great weight of current authority that juvenile proceedings, unlike criminal proceedings, are not presumptively open to the public. Accordingly, we reject the argument that the press has an absolute right, under the United States Constitution, of access to such proceedings. Our conclusions, however, do not address the media's right of access under section 1—5(6) of the Act. We now consider that section of the Act.

Unlike the State statutes considered to date by other State courts, section 1—5(6) *excepts* the news media from the general public who are excluded from juvenile proceedings. Section 1—5(6) further provides that except for those persons specified in section 1—5, only persons "who in the opinion of the court have a direct interest in the case or in the work of the court shall be admitted to the hearing." (Ill. Rev. Stat. 1989, ch. 37, par. 801—5(6).) Two supreme court cases have considered the predecessor to section 1—5(6), section 1—20(6), without reaching

the question presented in this appeal. In *Jones*, a delinquent minor waived his right to a public trial and the trial court ordered the general public and the press excluded from the proceedings. The order was later modified to allow the news media admittance but was subject to the condition that nothing regarding the proceedings was to be published. On appeal, the minor claimed error in the admittance of the media and argued his personal right to a public trial could be waived.

The *Jones* court reasoned section 1—20(6) evidenced the legislature's intent that "openness should prevail throughout [juvenile] proceedings." (*Jones*, 46 Ill. 2d at 509, 263 N.E.2d at 864.) Further, the court noted the ability to waive a constitutional right does not ordinarily carry with it the right to insist on the opposite of that right. Finding no prejudice to the respondent in allowing the press access to the proceedings, the court found no error in denying the minor a purely private trial.

In *In re a Minor* (1989), 127 Ill. 2d 247, 537 N.E.2d 292, the supreme court determined the trial court's power to exclude the news media under section 1—20(6) was unconstitutionally applied where the identity of the delinquent minor was learned through lawful and routine newspaper reporting. The orders entered in *Minor* were similar to those entered here: the media was (1) prohibited from publishing the minor's name; and (2) banned from the proceedings unless it agreed to comply with the nonpublish order. The court noted the order was not necessary to protect the minor because the minor's identity had already been revealed.

These cases are distinguishable from the case presented. Here, it is undisputed that the news media had not learned the minors' identities through accepted reportorial techniques prior to the adjudicatory hearing when the News asked for admittance to the proceedings. This fact distinguishes this case from *Minor*. Additionally, this case involves two victims of abuse, unlike *Jones* and *Minor*, which involved alleged delinquents.

■ The News relies on *Jones* for its argument that juvenile proceedings are presumptively *open* in Illinois. We do not read *Jones* so broadly. The *Jones* court was presented with the issue of whether a delinquent minor had a right to a private trial. After considering the language of section 1—20(6), the *Jones* court reasoned the legislature intended for openness to "prevail throughout the proceedings." (*Jones*, 46 Ill. 2d at 509, 263 N.E.2d at 864.) We do not believe this statement is in conflict with a finding that the press has only a conditional right of access under the statute. In our view, the language of section 1—5(6) suggests the legislature intended to give trial courts control over

persons admitted to juvenile court hearings.

Further, we note that since *Jones* was decided in 1970, section 1—20(6) has been amended to include the following sentence at the end of the successor section:

"However, the court may, for the minor's protection and for good cause shown, prohibit any person or agency present in court from further disclosing the minor's identity." (Ill. Rev. Stat. 1989, ch. 37, par. 801—5(6).)

The addition of this language further evidences an intent to give trial courts the discretion to deny access to anyone for the minor's protection.

Our conclusion is further supported by other provisions of the Act. Section 1—8(C) of the Act provides:

"Juvenile court records shall not be made available to the general public but may be inspected by representatives of agencies, associations and news media or other properly interested persons by general or special order of the court. The State's Attorney, the minor, his parents, guardian and counsel shall at all times have the right to examine court files and records." (Ill. Rev. Stat. 1989, ch. 37, par. 801—8(C).)

Also section 2—22 directs as to "factual contents and the conclusions of the reports prepared for the use of the court and considered by it" at dispositional hearing as follows:

"Factual contents, conclusions, documents and sources disclosed by the court under this paragraph shall not be further disclosed without the express approval of the court pursuant to an in camera hearing." (Ill. Rev. Stat. 1989, ch. 37, par. 802—22(2).)

Section 1—8(C), which directs that the news media may only inspect court records by general or special order of the court, evidences that juvenile records of proceedings are to remain confidential. (Ill. Rev. Stat. 1989, ch. 37, par. 801—8(C).) Allowing the press unfettered access to court hearings where confidential records are generated would render this provision meaningless. (See *T.R.*, 52 Ohio St. 3d at 16, 556 N.E.2d at 449.) Section 2—22 also stresses the importance of confidentiality in juvenile proceedings.

The cases from other jurisdictions which have considered this issue and held there is a conditional right of access have also concluded that the media may only be excluded from the proceedings after a hearing at which it was concluded (1) the State's interest in protecting the minor is compelling, and (2) the potential harm to the minor on opening the proceedings outweighs the benefits of public access. (*T.R.*, 52 Ohio St. 3d at 18-19, 556 N.E.2d at 451; *N.H.B.*, 769 P.2d at 852; *Brad-*

*shaw*, 410 N.W.2d at 579; *Florida Publishing*, 253 Ga. at 473, 322 S.E.2d at 238.) Two States have determined the State's interest in protecting the juvenile is compelling and overrides the benefits of public access. *T.R.*, 52 Ohio St. 3d at 21, 556 N.E.2d at 453; *J.S.*, 140 Vt. at 464, 438 A.2d at 1127.

■ Here, the trial court concluded that because of (1) the nature of the abuse, and (2) size of community where the minors resided, and would likely continue to reside, extensive publicity of the proceedings would adversely affect the two minors for the rest of their lives. The State's interest in protecting these minors is compelling and the articulated reasons for closing these proceedings are sound. We find the trial court properly exercised its discretion under section 1—5(6).

The News also contends the trial court's requirement that the media make advance application for admittance to a juvenile proceeding is not authorized by section 1—5(6) and is an unconstitutional prior restraint of the press. In his order, the trial judge stated advance application by the media would prevent any delay in the proceedings when the media entered the courtroom and would ensure all parties understood "the ground rules" before the proceedings began. The trial judge did not indicate what the advance application would entail.

■ We believe the trial judges do have the discretion to determine the best way to conduct juvenile proceedings. Establishing a procedure to identify efficiently all persons seeking admission to a juvenile proceeding falls within this discretion. However, a formal written application for admission, upon which a hearing may have to be conducted, in our view, causes more delay in the commencement of proceedings designed to protect minors.

■ The News also argues the portion of the trial court's order requiring it, before admittance to the proceedings, to state it would not further identify the minor constitutes a prior restraint of the press. A prior restraint occurs when the State attempts to prohibit the broadcasting or publication of material already in the possession of the media. (*T.R.*, 52 Ohio St. 3d at 19, 556 N.E.2d at 452, citing *Florida Freedom Newspapers, Inc. v. McCrary* (Fla. 1988), 520 So. 2d 32, 35.) The Supreme Court has held that once truthful information is publicly revealed or in the public domain, a court may not constitutionally restrain its dissemination. (*Smith*, 443 U.S. at 103, 62 L. Ed. 2d at 405, 99 S. Ct. at 2671; *Oklahoma*, 430 U.S. at 309-12, 51 L. Ed. 2d at 357-59, 97 S. Ct. at 1046-47.) In the case presented, the order is broad enough to require that the News represent it will not further publicize the minor's identity *no matter* from what source the information was obtained. To the extent the order concerns information the News may

obtain through common reportorial techniques, it may not be restrained from publishing the information. However, the court may prohibit the News from publishing any information regarding the minors' identities which was obtained from the courtroom.

Finally, we consider the News' claim that the procedure used to bar the media in this case was improper. Consideration of this issue requires an examination of the purposes and policy of the Act.

■ Section 1—2 of the Act sets forth the purposes and policies of the Act, which include, *inter alia*, the protection of minors and the strengthening of a minor's family ties, whenever possible. (Ill. Rev. Stat. 1989, ch. 37, par. 801—2.) The relation between the juvenile court and the minor is that of *parens patriae* (*People v. Zepeda* (1970), 47 Ill. 2d 23, 29, 265 N.E.2d 647, 650), and it is the duty of the court to attempt to act solely in the best interests of the child and for his own protection. (*In re Frazier* (1978), 60 Ill. App. 3d 119, 123, 376 N.E.2d 643, 646, *rev'd on other grounds* (1979), 76 Ill. 2d 204, 390 N.E.2d 884.) To these ends, a court will even intervene on its own motion and take note of legitimate and substantial errors in the proceeding involving minors even though the minors may be represented by counsel. *In re Carson* (1973), 10 Ill. App. 3d 387, 388-89, 294 N.E.2d 75, 76-77.

■ The News argues there must be a request for their exclusion by the parties before it may be denied access. We disagree. The court as *parens patriae* has a duty to protect a minor when danger of harm is perceived.

For the foregoing reasons, the order of the trial court is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

SPITZ, J., concurs.

JUSTICE STEIGMANN, dissenting:

In my judgment the majority has incorrectly analyzed the issues before this court. As a result, it has reached the wrong conclusion. Respectfully, I dissent.

To correctly analyze the issues before this court, three questions must be asked: (1) Do the news media have a statutory right to be present during juvenile court proceedings? (2) If the news media have such a right, do courts possess the authority to impose conditions upon the exercise of that right? (3) Do courts have the authority to prohibit the news media from publishing or disclosing information obtained while a media representative was present during juvenile court pro-

ceedings? As the following discussion reveals, the answer to each of these questions is clear, requiring that the orders before us on appeal, purporting to impose restrictions upon the news media, be reversed.

## I. DO THE NEWS MEDIA HAVE A STATUTORY RIGHT TO BE PRESENT DURING JUVENILE COURT PROCEEDINGS?

The cardinal rule of statutory construction is to ascertain and give meaning to the intention of the legislature. When the text of the statute being construed is clear, ancillary sources need not be consulted. In my judgment, this is such a case. Section 1—5(6) of the Juvenile Court Act of 1987 (Act) (Ill. Rev. Stat. 1989, ch. 37, par. 801—5(6)) states *in pertinent part* the following: "The general public except for the news media and the victim shall be excluded from any hearing and \*\*\*." The language appearing after the word "and" in no way affects or modifies the language appearing before that word. The 17 words appearing before the word "and" can mean only one thing: the news media and the victim have the right to be present at a hearing conducted under the Act.

I feel a bit awkward in making this emphatic assertion in view of the newspaper's position in this case, conceding that it does not have "an 'absolute right' to be admitted to all juvenile proceedings." It may be that the newspaper thought this position to be tactically advantageous, but as a matter of law, I believe it to be clearly wrong.

While I am sympathetic to the newspaper's claim that it has a first amendment right of access to proceedings under the Act, this court need not pass upon that question in this case. Similarly, we need not concern ourselves with a lengthy review of what courts from other States have held regarding media access to their juvenile court proceedings. We need not concern ourselves with these subjects because the policy-making branch of our State government, the Illinois General Assembly, has already determined the policy regarding access of the news media to juvenile court proceedings: the news media may be present if they wish. This legislative judgment is in violation of no State or Federal constitutional principle and, accordingly, it must be obeyed. It is utterly inappropriate for courts which disagree with legislative judgments to frustrate those judgments by construing statutes in a fashion to achieve ends thought desirable by the courts but not intended by the legislature.

By its holding in this case, the majority has usurped legislative prerogatives by judicially amending section 1—5(6) of the Act to make it read, in effect, as follows: "The general public except the news media and the victim shall be excluded from any hearing *unless the court for*

*good cause shown believes they should be excluded as well.*" Had the legislature intended to add the emphasized language, it could have done so.

*In re Jones* (1970), 46 Ill. 2d 506, 263 N.E.2d 863, is the only decision of the Illinois Supreme Court which construed this section. While the majority concedes that the *Jones* court reasoned the legislature intended "openness to 'prevail throughout the [juvenile] proceedings' " (205 Ill. App. 3d at 489, quoting *Jones*, 46 Ill. 2d at 509, 263 N.E.2d at 864), that barren concession hardly conveys the feeling of emphasis on this point found in *Jones*.

> "[I]t is clear that the legislature intended that openness should prevail throughout the proceedings. We are of the opinion that section 1—20(6) [the predecessor statute to section 1—5(6), which was being construed in *Jones*] serves the dual function of not only protecting a respondent's right to a 'public trial' but also preserves the right of the general populace to know what is transpiring in *its* courts." (Emphasis in original.) *Jones*, 46 Ill. 2d at 509, 263 N.E.2d at 864.

The only other case in which the supreme court has addressed section 1—20(6) is *In re a Minor* (1989), 127 Ill. 2d 247, 537 N.E.2d 292, in which the issue before the court was whether a newspaper which learns through ordinary reportorial techniques of the identity of a minor charged in a closed criminal proceeding may be forbidden from reporting that information once it has entered the public domain. (*Minor*, 127 Ill. 2d at 250, 537 N.E.2d at 293.) The court held the answer to that question was no. (*Minor*, 127 Ill. 2d at 250-51, 537 N.E.2d at 293.) While *Minor* did not directly address whether the news media have the right of access to juvenile court proceedings under section 1—5(6) of the Act, that opinion nonetheless contains an indication of the supreme court's view on this subject.

In setting forth the factual circumstances in *Minor* in which the reporter for a local newspaper learned of the alleged delinquent's identity from her discussions with police officers and Watseka city council members, the court stated the following:

> "The next day, *** the minor was taken before the trial court to be charged in connection with the shooting. *Under the mistaken impression that the courtroom was closed to the press,* [the reporter] chose not to attend. During and immediately after the hearing, however, she spoke about the case with an Iroquois County juvenile probation officer, who told her what had happened at the hearing and about the minor's family life. In the course of the conversation the probation officer, like the police

chief, freely used the minor's name." (Emphasis added.) (*Minor*, 127 Ill. 2d at 252, 537 N.E.2d at 294.)

The emphasized language from the above quotation is a strong indication that the supreme court believes that the courtroom in which the juvenile proceedings in *Minor* were taking place was open to the press.

## II. DO THE TRIAL COURTS HAVE THE AUTHORITY TO IMPOSE CONDITIONS ON NEWS MEDIA ACCESS TO JUVENILE PROCEEDINGS?

The majority states that "[i]n our view, the language of section 1—5(6) suggests the legislature intended to give trial courts control over persons admitted to juvenile court hearings." (205 Ill. App. 3d at 489-90.) In support of this conclusion, the majority cites section 1—8(C) of the Act, which concerns the confidentiality of court records. (Ill. Rev. Stat. 1989, ch. 37, par. 801—8(C).) In my judgment, this section not only fails to support the majority opinion, but in fact undermines it.

Section 1—8(C) of the Act demonstrates that the legislature is fully capable of distinguishing between the general public on the one hand and the news media on the other in according special rights to the news media which the general public does not possess. That section provides that juvenile court records "shall not be made available to the general public" but may be inspected by the news media upon general or special order of the court.

Citing section 1—8(C) of the Act, the majority states the following: "Allowing the press unfettered access to court hearings where confidential records are generated would render this provision meaningless." (205 Ill. App. 3d at 490.) Section 2—22(2) of the Act states that dispositional reports prepared for juvenile delinquency hearings—the equivalent of presentence reports used in sentencing hearings for adults—shall not be disclosed "without the express approval of the court pursuant to an in camera hearing." (Ill. Rev. Stat. 1989, ch. 37, par. 802—22(2).) Section 5—3—4(b)(7) of the Unified Code of Corrections (Code) similarly provides that presentence reports shall be opened for inspection to noncourt personnel "only as ordered by the court." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—3—4(b)(7).) A comparison of section 2—22(2) of the Act with section 5—3—4(b)(7) of the Code thus reveals that in sentencing hearings regarding *both* juvenile delinquents and adult criminal defendants, the presentence reports are not to be disclosed, absent a court order. Yet I am confident the majority would not hold that the news media may be denied access or given only restricted access to sentencing hearings in felony cases based upon a claim that "[a]llowing the press unfettered access to [sentencing] hearings where confidential records are generated would render

[the confidentiality statute] meaningless."

The legislature is perfectly capable of saying what it means regarding the sensitive subjects of protection of juveniles and news media access to juvenile court proceedings. Thus, when the legislature in section 1—5(6) of the Act provides for the right of the news media to be present and does not provide for any authority in the trial courts to limit or restrict news media access in any way, this legislative judgment should be respected. The only way to avoid concluding that the legislature meant what it said is somehow to decide that the legislature overlooked the concerns expressed by the majority as to the evils that would befall the juvenile court system if news media access were unlimited. Such a claim is simply untenable in view of the great detail set forth in section 1—8 of the Act regarding the confidentiality and accessibility of juvenile court records.

The trial court's claim that it needs "advance application" by the media whenever the media wished to attend juvenile court proceedings in order to "prevent any delay in the proceedings" is without merit. This claim is in no way connected to the legitimate needs of trial judges to have the discretion to determine the best way to conduct juvenile proceedings. In the hundreds of appeals to this court from proceedings under the Act, no problem has ever been shown in having persons seeking admission to such proceedings identify themselves so that the trial judge might determine whether their presence was appropriate. This record is devoid of any basis to conclude that establishing a procedure to identify such persons is necessary or desirable, much less the requirement of a formal written application for admission. By suggesting such a procedure, the majority is proposing a cure for no known disease.

III. DO COURTS HAVE THE AUTHORITY TO PROHIBIT THE NEWS MEDIA FROM PUBLISHING OR DISCLOSING INFORMATION OBTAINED WHILE A NEWS MEDIA REPRESENTATIVE WAS PRESENT DURING JUVENILE COURT PROCEEDINGS?

In my judgment, this third question is the easiest of the three to answer, and I do so with an emphatic, "No."

The last sentence of section 1—5(6) of the Act states the following: "However, the court may, for the minor's protection and for good cause shown, prohibit any person or agency present in court from further disclosing the minor's identity." (Ill. Rev. Stat. 1989, ch. 37, par. 801—5(6).) In this provision, the legislature has authorized the imposition of restrictions on persons present during proceedings under the Act, such as attorneys or the members of a juvenile's family, but in

doing so, the legislature must be presumed to have intended not to act in violation of the United States Constitution. In my judgment, to hold this provision applicable to the news media would be to violate the first amendment; therefore, this statute must be construed so that the courts are not given authority to impose restrictions upon publication or disclosure by the news media of matters learned by having news media representatives present in the courtroom.

> "[T]he first amendment strips the State of the power to proscribe the publication of information which has already been lawfully revealed and which has been obtained by lawful means." (*Minor*, 127 Ill. 2d at 268, 537 N.E.2d at 301.)

As discussed in part I of this dissent, the news media have the right to be present during juvenile court proceedings; accordingly, anything learned through their presence has, by definition, been lawfully revealed to them and "obtained by lawful means." Any court orders purporting to limit the use of information obtained through media presence would be an improper effort to impose a prior restraint upon the freedom of the press and would be in violation of the United States Constitution.

For the reasons stated, the orders on appeal should be reversed in their entirety.