(No. 71270.—)

*In re* A MINOR, Whose Name Is Omitted (The People of the State of Illinois, Appellee; Champaign News-Gazette, Inc., Appellant).

*Opinion filed June 25, 1992.*

MILLER, C.J., and HEIPLE, J., dissenting.

Traci E. Nally and James L. Capel, Jr., of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., of Champaign, for appellant.

Stephen R. Pacey, of Pacey & Pacey Lawyers, P.C., of Paxton, guardian *ad litem*, and Mark A. Huddle, law student, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

This is an interlocutory appeal from an order entered in the circuit court of Ford County in two juvenile court proceedings. Each case involves a minor child who was the victim of physical and sexual abuse by a parent. The purpose of the juvenile court proceeding was to provide shelter and care for these victims of abuse. A guardian *ad litem* was appointed in each case to protect the rights of the juveniles.

Not to be confused with this case are any issues that may deal with the prosecution of criminal or civil proceedings against the adult perpetrators of the alleged abuse against the juvenile victims.

Prior to commencement of the hearing, the trial court would not permit the reporter from the Champaign News-Gazette to gain admission to the proceedings without signing a pledge not to reveal the identity of the juvenile victims of abuse who were the subjects of the case. The reporter was admitted on the condition that the identity of the minors would not be revealed. The newspaper appealed.

The appellate court held that the trial court order was in error to the extent that it prohibited the newspaper from reporting the names of the juveniles regardless of the source of its information. But the appellate court affirmed the trial court to the extent that it prohibited the newspaper from reporting the names of the juveniles, if the source of the identity was the attendance at the juvenile proceedings. (205 Ill. App. 3d 480.) We

granted the newspaper's petition for leave to appeal (134 Ill. 2d R. 315(a)).

We are asked to decided whether, under the facts of this case, section 1—5(6) of the Juvenile Court Act grants the Champaign News-Gazette the authority to disclose the names of the minor victims.

We are also asked to decide whether the order of the trial court proscribing the newspaper from disclosing the names of the minors, under the facts of this case, constitutes an unconstitutional prior restraint on the newspaper's exercise of its right to freedom of the press guaranteed by the first and fourteenth amendments to the United States Constitution.

## PREFATORY STATEMENT

At the outset, we must emphasize that this is not a case of a juvenile offender that perpetrated a wrong against an adult or another juvenile. Also, not to be confused with this case are issues that may deal with the prosecution of an alleged juvenile criminal offender as an adult.

The State of Illinois has been a leader in creating a separate court system of justice for minors with a goal of rehabilitation rather than punishment. (1899 Ill. Laws 131.) This concept was followed by other States. However, the policy of rehabilitation is undergoing reevaluation. The alarming increase in juvenile involvement in major crimes has created a more vocal opposition to rehabilitation and a call for retribution and deterrence as an effective technique for controlling antisocial behavior. (Geraghty & Raphael, *Reporter's Privilege and Juvenile Anonymity: Two Confidentiality Policies on a Collision Course*, 16 Loy. U. Chi. L.J. 43, 76 (1984).) It is argued that publicizing the names of juvenile offenders would deter the criminal activity by other juveniles and cause

parents to place greater controls on the behavior of their children.

In this case, we are not asked to choose between the merits of the conflicting philosophies of dealing with juvenile offenders. The most significant aspect of this case is that it does not involve juvenile offenders. It involves juvenile victims of child abuse by a parent.

I

The minor children in the case at bar came into the juvenile court system as "abused minor[s]." (Ill. Rev. Stat. 1989, ch. 37, par. 802—3(2).) They were the victims of physical and sexual abuse by a parent.

> "In 1962, a prominent physician ominously predicted that the battered child syndrome 'will be found to be a more frequent cause of death than ... well recognized and thoroughly studied [children's] diseases.' Tragically, that prediction has been confirmed. As of early 1973, child abuse was the most common cause of death among small children in the United States. The battered child syndrome has definitely reached epidemic proportions." (Kelley, *The Child Abuse Epidemic: Illinois' Legislative Response and Some Further Suggestions*, 1974 U. Ill. L.F. 403, 403.)

Recently, a Chicago-based national television celebrity, accompanied by a former Illinois Governor, testified before a United States Senate committee about the increase in child abuse and child neglect cases and fatalities. (Chi. Trib., Nov. 12, 1991, §A, at 4.) The problem has not abated.

The Champaign News-Gazette contends that it was lawfully admitted to the proceedings involving the minors by section 1—5(6) of the Juvenile Court Act, which provides in part: "The general public *except for the news media and the victim* shall be excluded from any hearing ***." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 37,

par. 801—5(6).) The newspaper contends that having gained access lawfully, it is free to report anything it heard or observed, without restraint, because of the right of the general populace to know what is transpiring in its courts.

It is undisputed that the press serves as a conduit of information to the public and as a check on abuses of governmental power in the administration of justice. See *Sheppard v. Maxwell* (1966), 384 U.S. 333, 350, 16 L. Ed. 2d 600, 613, 86 S. Ct. 1507, 1515.

The Champaign News-Gazette cites *In re Jones* (1970), 46 Ill. 2d 506, in support of its argument that it is free to report anything that it hears or observes at the juvenile court proceedings. Its reliance on *Jones* is misplaced for a number of significant reasons. In *Jones*, there was no attempt by either party to prevent disclosure of the name of 16-year-old Kimmel Jones. Significantly, the case is entitled *In re Kimmel Jones*. In addition, Jones was charged with placing an explosive device in the mail box at the home of Everett Smith. In the case at bar, the minors are in the juvenile court system as victims of physical and sexual abuse by a parent, while Jones was in the system as a delinquent. At the time that *Jones* was decided by this court, section 1—20(6) (now section 1—5(6)) read as follows:

> " 'The general public except the news media shall be excluded from any hearing and, except for persons specified in this Section, only persons, including representatives of agencies and associations, who in the opinion of the court have a direct interest in the case or in the work of the court shall be admitted to the hearing.' " *Jones*, 46 Ill. 2d at 509, quoting Ill. Rev. Stat. 1969, ch. 37, par. 701—20(6).

In 1977, section 1—20(6) was amended and the following language added:

"However, the court may, for the minor's protection and for good cause shown, prohibit any person or agency present in court from further disclosing the minor's identity." (Pub. Act 80—813, eff. Sept. 20, 1977.)

This court, in the case of *In re A Minor*, considered this section, as amended. The court held:

"[T]hat part of *** the Juvenile Court Act which gives the court the power to proscribe the publication of a minor's name in connection with a juvenile proceeding cannot be constitutionally applied where the publisher learns the identity of the minor not in a hearing closed to the public, but through routine, reportorial techniques, at least where a serious and imminent threat of harm to the minor's well-being has not been demonstrated by substantial evidence. We express no opinion as to the question of the statute's facial validity, or its application in other instances." *In re A Minor* (1989), 127 Ill. 2d 247, 270.

The case at bar can be distinguished from *In re A Minor* because the Champaign News-Gazette acknowledges that it did not know the identities of the minors and stood to gain knowledge of the minors' identities solely through attending the juvenile court proceedings.

Neither side has cited any authority which balances the role of the media as a check on abuses in the operation of the juvenile court system and a physically or sexually abused minor's right to privacy, especially where the minor is in the system because he or she is a victim and not a delinquent.

In the case at bar, the trial court considered the size of the community where the minors resided and would likely continue to reside. Public identity could adversely affect the two minors for the rest of their lives. The trial court concluded that the State's interest in protecting the minors is a compelling reason for precluding the Champaign News-Gazette from revealing their identities.

The Champaign News-Gazette has not made any argument that its role as a conduit of information to the

public has been diminished because it cannot reveal the identity of the minors. This court and courts throughout this country in published opinions identify minors in juvenile proceedings by their initials, or first name and an initial, so that their anonymity may be preserved. The same policy would not diminish the role of the media.

Likewise, the Champaign News-Gazette has not made any argument that its role as a check on abuses in the operation of the juvenile court system has been diminished because of its inability to reveal the names of these unfortunate juveniles.

Life has not been fair to the two minors in the case at bar because they were brought into this world by a parent who physically and sexually abused them.

The "Purpose and policy" of the Juvenile Court Act is stated in section 1—2, which provides in part:

> "(2) *** This Act shall be administered in a spirit of humane concern, not only for the rights of the parties, but also for the fears and the limits of understanding of all who appear before the court.
>
> * * *
>
> (4) This Act shall be liberally construed to carry out the foregoing purpose and policy." (Ill. Rev. Stat. 1989, ch. 37, pars. 801—2(2), (4).)

We are not persuaded that the legislature intended that, under the facts of this case, the news media would be authorized to reveal the identities of the minor victims.

We therefore conclude that section 1—5(6) of the Juvenile Court Act does not grant the Champaign News-Gazette the right to disclose the names of the juveniles obtained at the court hearing, under the facts of this case.

## II

The Champaign News-Gazette contends that it is an unconstitutional prior restraint under the first amend-

ment to the United States Constitution for the Illinois legislature to empower the courts with the authority to restrict the publication of information obtained at a juvenile court hearing.

This argument is not persuasive. In the first instance, we note that the legislature has not authorized the court to restrict "information" obtained at the juvenile victims' proceedings. The only information that the newspaper may not disclose is the identities of the minor victims. The Champaign News-Gazette's reliance on *In re A Minor* (1989), 127 Ill. 2d 247, in support of its argument is misplaced.

The most significant difference between *A Minor* and the case *sub judice* is that in *In re A Minor*, the juvenile was before the court in connection with a fatal shooting. Here, the juveniles are before the court as victims of physical and sexual abuse by a parent. Furthermore, in *In re A Minor*, the publisher "learn[ed] the identity of the minor not in a hearing closed to the public, but through routine, reportorial techniques." (*In re A Minor*, 127 Ill. 2d at 270.) In the case at bar, the Champaign News-Gazette did not obtain the identities of the minor victims through reportorial techniques. Nor were the minor victims' identities in the public domain. The Champaign News-Gazette discovered the identities of the minor victims only through its presence at the closed juvenile proceedings concerning these minors. Therefore, the newspaper's reliance on *In re A Minor* is inapposite.

In the instant case, under section 1—5(6), "the court may, for the minor's protection and for good cause shown, prohibit any person or agency present in court from further disclosing the minor's identity." (Ill. Rev. Stat. 1989, ch. 37, par. 801—5(6).) In determining whether this section amounts to an unconstitutional prior restraint on the freedom of the press guaranteed by the first amendment, we note that prior restraints

are not unconstitutional *per se.* (*Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 558, 43 L. Ed. 2d 448, 459, 95 S. Ct. 1239, 1246.) When confronted with a potentially unconstitutional prior restraint on first amendment rights, courts apply a test which balances the various interests at stake. (See *Landmark Communications, Inc. v. Virginia* (1978), 435 U.S. 829, 842-43, 56 L. Ed. 2d 1, 13, 98 S. Ct. 1535, 1543.) The court is required to:

> "make its own inquiry into the imminence and magnitude of the danger said to flow from the particular utterance and then to balance the character of the evil, as well as its likelihood, against the need for free and unfettered expression. The possibility that other measures will serve the State's interests should also be weighed." *Landmark Communications, Inc.*, 435 U.S. at 843, 56 L. Ed. 2d at 13, 98 S. Ct. at 1543.

In the case at bar, the State has an interest in the nondisclosure of the minor victims' identities in its role as *parens patriae.* It was in its role as *parens patriae* that the State initiated these juvenile proceedings to provide shelter and care for these abused children. The minor victims reside and will continue to reside in a small community. Public identity could cause continuing emotional trauma to these unfortunate children and impede the lengthy and difficult healing process which they must endure. We find that the danger of public disclosure and the probability of irreparable adverse effects which such disclosure would entail to be a compelling State interest at stake in this case.

Coupled with the State's interest in nondisclosure, we find that the minor victims themselves have a compelling interest at stake in this case. The Illinois Constitution guarantees its citizens a constitutional right to be free from governmental "invasions of privacy." (Ill. Const.

1970, art. I, §6.) Article I, section 6, of the Illinois Constitution provides in part:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, *invasions of privacy* or interceptions of communications by eavesdropping devices or other means." (Emphasis added.) (Ill. Const. 1970, art. I, §6.)

This constitutional right to be free from governmental invasions of privacy is supplemented by the constitutional right to a certain remedy for invasions or injuries to one's privacy provided for in article I, section 12, of the Illinois Constitution of 1970. (Ill. Const. 1970, art. I, §12.) Article I, section 12, of the Illinois Constitution of 1970 provides in part:

> "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, *privacy*, property or reputation. He shall obtain justice by law, freely, completely, and promptly." (Emphasis added.) (Ill. Const. 1970, art. I, §12.)

It is clear from the debates in the Sixth Illinois Constitutional Convention that article I, section 12, was intended to protect an individual's privacy from invasions or injuries caused by another *nongovernmental* individual or company. 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1531-32.

The minor victims in this case have done nothing to limit or diminish their constitutional right to be free from governmental *and* nongovernmental invasions of their privacy. They are not juvenile delinquents. They are not participating in the juvenile proceedings begun on their behalf through their own free will. They were victims of abuse by a parent. They were thrust into the juvenile system by actions of third parties, not by their own actions. Under these facts, we find that the minor victims have a compelling interest in their right to be

free from invasions of their privacy. Public disclosure of their identities would surely invade their right to privacy in a most egregious manner.

Against the State's and the minors' compelling interests in nondisclosure, we must weigh the "character of the evil, as well as its likelihood, against the need for free and unfettered expression." (*Landmark Communication, Inc.*, 435 U.S. at 843, 56 L. Ed. 2d at 13, 98 S. Ct. at 1543.) Under the facts of this case, we find that there is no compelling need for free and unfettered disclosure of the minor victims' identities. The Champaign News-Gazette was granted access to the juvenile court proceedings, which were closed to the public. It was free to report anything that it observed or heard, except the identity of the minors. As previously stated in this opinion, the Champaign News-Gazette was not deprived of the opportunity to exercise its constitutional right to inform the public about the operation of the juvenile court system. Under the facts of this case, prohibiting the newspaper from disclosing the minor victims' identities in no way interferes with the newspaper's constitutional role of acting as a conduit for the public in generating the free flow of ideas, keeping the public informed of the workings of governmental affairs, and checking abuses by public officials.

The Champaign News-Gazette has not cited any case, and we are not aware of any, which grants it the constitutional right to publish the names of juvenile victims of physical and sexual abuse by a parent when that information is obtained by attending a juvenile court proceeding that is closed to the public.

We therefore conclude that section 1—5(6) of the Juvenile Court Act is not unconstitutional under the facts of this case.

## III

The dissent does not recognize the significant fact that *victims of child abuse* should not be treated in the same manner as *juvenile criminal offenders*. The dissent does not cite a single case that authorizes the media to disclose the identity of *a victim of child abuse* when that information is obtained at a juvenile court proceeding that is *closed to the public*. Instead, the dissent relies primarily on *Oklahoma Publishing Co. v. District Court* (1977), 430 U.S. 308, 51 L. Ed. 2d 355, 97 S. Ct. 1045, and *Smith v. Daily Mail Publishing Co.* (1979), 443 U.S. 97, 61 L. Ed. 2d 399, 99 S. Ct. 2667. Both of those cases are distinguishable from the instant case.

*Oklahoma Publishing* can be distinguished because it involved a *juvenile offender* and the proceeding was *open to the public*. In *Oklahoma Publishing*, a minor appeared at a detention hearing after being charged with murder. Reporters were present at the hearing and learned the juvenile's name. As the minor left the courtroom, his picture was taken by a newspaper photographer. Thereafter, a number of newspapers, radio stations and television stations published or broadcast the minor's name and picture. Subsequently, a hearing was held at which the court entered an order prohibiting the news media from publishing, broadcasting or disseminating the name or picture of the minor. The United States Supreme Court held that the United States Constitution "will not permit a state court to prohibit the publication of widely disseminated information obtained at court proceedings *which were in fact open to the public*." (Emphasis added.) (*Oklahoma Publishing*, 430 U.S. at 310, 51 L. Ed. 2d at 357, 97 S. Ct. at 1046.) In the case at bar, unlike in *Oklahoma Publishing*, the court proceedings were not open to the general public. The identities of the juveniles here were never "publicly revealed." Additionally,

the minors here were not charged with any crime; they were in court because they were the victims of abuse by a parent.

*Smith v. Daily Mail Publishing Co.* (1979), 443 U.S. 97, 61 L. Ed. 2d 399, 99 S. Ct. 2667, is distinguishable because it involved a *juvenile offender* and *the identity of the juvenile offender was obtained through routine reportorial techniques and not solely by attendance at closed juvenile proceedings*. In *Smith*, the United States Supreme Court held that the media could not be punished for violating a State statute making it a crime to publish the name of a juvenile offender. The minor's name was obtained in that case when reporters asked various witnesses to the crime, the police, and an assistant prosecuting attorney for his name. In the case at bar, the Champaign News-Gazette stood to gain knowledge of the juvenile victims' identities solely through attendance at the juvenile court proceedings, which were closed to the general public.

Finally, the dissent erroneously states: "Indeed, the United States Supreme Court has never upheld a prior restraint of information protected by the first amendment." (149 Ill. 2d at 261-62.) In *Seattle Times Co. v. Rhinehart* (1984), 467 U.S. 20, 81 L. Ed. 2d 17, 104 S. Ct. 2199, the United States Supreme Court upheld a court order forbidding a newspaper from disseminating information obtained through pretrial discovery in a civil proceeding. The Court stated: "[E]ven though the broad sweep of the First Amendment seems to prohibit all restraints on free expression, this Court has observed that '[f]reedom of speech *** does not comprehend the right to speak on any subject at any time.' " *Seattle Times Co.*, 467 U.S. at 31, 81 L. Ed. 2d at 26, 104 S. Ct. at 2207, quoting *American Communications Association v. Douds* (1950), 339 U.S. 382, 394-95, 94 L. Ed. 925, 941, 70 S. Ct. 674, 682.

More significantly, the dissent does not recognize that, under the facts of this case, the first amendment role of the media is not diminished by withholding the names of the juvenile victims. We therefore reaffirm our position that section 1—5(6) of the Juvenile Court Act is not unconstitutional under the facts of this case.

Accordingly, the judgment of the appellate court is affirmed.

*Appellate court affirmed.*

CHIEF JUSTICE MILLER, dissenting:

Because I believe the constitutional guarantee of a free press prohibits the State from inviting journalists into a courtroom and simultaneously editing or censoring what they report about the proceedings, I respectfully dissent.

Section 1—5(6) of the Juvenile Court Act provides that "[t]he general public except for the news media and the victim shall be excluded" from juvenile hearings. (Ill. Rev. Stat. 1989, ch. 37, par. 801—5(6).) It also provides, however, that the juvenile court may, "for the minor's protection and for good cause shown, prohibit any person or agency present in court from further disclosing the minor's identity." (Ill. Rev. Stat. 1989, ch. 37, par. 801—5(6).) Thus, the Act unambiguously purports to grant judges the authority to prohibit the media from disclosing a minor's identity, even when this information is revealed in proceedings statutorily open to media attendance. The only issue presented in this case, then, is whether the trial judge's order prohibiting the newspaper from identifying the minor victims is an unconstitutional prior restraint on the freedom of the press.

The majority correctly notes that prior restraints are not unconstitutional *per se.* (149 Ill. 2d at 254-55.) Nevertheless, such measures are the most serious and the least tolerable infringement on first amendment rights.

(*Nebraska Press Association v. Stuart* (1976), 427 U.S. 539, 559, 49 L. Ed. 2d 683, 697-98, 96 S. Ct. 2791, 2802-03.) For this reason, any prior restraint bears a "heavy presumption" against its constitutional validity. *Organization for a Better Austin v. Keefe* (1971), 402 U.S. 415, 419, 29 L. Ed. 2d 1, 5, 91 S. Ct. 1575, 1578.

In *Oklahoma Publishing Co. v. District Court* (1977), 430 U.S. 308, 51 L. Ed. 2d 355, 97 S. Ct. 1045, the Supreme Court held that a newspaper could not be enjoined from publishing the name or photograph of an 11-year-old offender after reporters gained the information by attending a juvenile proceeding. (See also *Smith v. Daily Mail Publishing Co.* (1979), 443 U.S. 97, 61 L. Ed. 2d 399, 99 S. Ct. 2667 (holding that a statute forbidding newspapers from publishing names of juvenile offenders without court approval violates the first amendment).) The Court also has found that States may not award civil damages for invasion of privacy against television stations and newspapers that publicize the names of rape victims obtained from public records. See *The Florida Star v. B.J.F.* (1989), 491 U.S. 524, 105 L. Ed. 2d 443, 109 S. Ct. 2603; *Cox Broadcasting Corp. v. Cohn* (1975), 420 U.S. 469, 43 L. Ed. 2d 328, 95 S. Ct. 1029.

To prohibit or punish publication of truthful, lawfully obtained information, government must demonstrate that such action is necessary to further a State interest of the highest order. (*Daily Mail*, 443 U.S. at 104, 61 L. Ed. 2d at 405, 99 S. Ct. at 2671.) If, as the majority suggests, the privacy rights of juvenile victims of sexual abuse are greater than those of juvenile offenders and adult victims of sexual offenses, the difference in degree is not of constitutional proportion, particularly where a court presumes to tell the media what they may or may not publish in the first instance. Indeed, the United States Supreme Court has never upheld a prior restraint

of information protected by the first amendment. The Court has only hypothesized that a restriction on the "publication of the sailing dates of transports or the number and location of troops" in time of war might be sufficient. (*Near v. Minnesota ex rel. Olson* (1931), 283 U.S. 697, 716, 75 L. Ed. 1357, 1367, 51 S. Ct. 625, 631.) Thus, while I share the majority's concern for the privacy rights of minor victims, I do not believe the State's interest in protecting these rights is of the magnitude necessary to sustain a prior restraint on publication.

The majority cites *Seattle Times Co. v. Rhinehart* (1984), 467 U.S. 20, 81 L. Ed. 2d 17, 104 S. Ct. 2199, for the proposition that the Supreme Court has sanctioned a prior restraint of the press. That case, however, involved a protective order prohibiting a newspaper, as the defendant in a civil action for defamation and invasion of privacy, from publishing information it obtained through pretrial discovery. The Court observed that "an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." (467 U.S. at 33, 81 L. Ed. 2d at 27, 104 S. Ct. at 2208.) The Court thus recognized that protective orders occupy a "unique" position in relation to the first amendment, and that court control over information obtained in discovery "does not raise the same specter of government censorship that such control might suggest in other situations." (467 U.S. at 32, 81 L. Ed. 2d at 26-27, 104 S. Ct. at 2207.) Unlike *Seattle Times*, the case before us involves restraint of the publication of information lawfully obtained by the media in its capacity as a newsgathering organization.

I believe this case is wrongly decided precisely because, as the majority notes, reporters for the News-Gazette obtained the minors' names at a court hearing which they were allowed to attend. The State may not,

consistent with the first amendment, prohibit the publication of information obtained at a court proceeding open to the media. (*Oklahoma Publishing*, 430 U.S. at 310, 51 L. Ed. 2d at 357, 97 S. Ct. at 1046.) Contrary to the majority's assertion, I believe that information disclosed at a hearing open to the media is, by definition, "publicly revealed." Once the media or general public are allowed to attend a judicial proceeding, even if they might have been properly excluded under State law, publication of information revealed there cannot be subject to prior restraint. (*Nebraska Press*, 427 U.S. at 568, 49 L. Ed. 2d at 703, 96 S. Ct. at 2807.) "Those who see and hear what transpired [in a courtroom] can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it." *Craig v. Harney* (1947), 331 U.S. 367, 374, 91 L. Ed. 1546, 1551, 67 S. Ct. 1249, 1254.

In sum, the State cannot ask the media to secret facts it makes no effort to safeguard in the first place. (*The Florida Star*, 491 U.S. at 544, 105 L. Ed. 2d at 462, 109 S. Ct. at 2615 (White, J., dissenting).) "If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information." (*Cox Broadcasting*, 420 U.S. at 496, 43 L. Ed. 2d at 350, 95 S. Ct. at 1047.) Unlike criminal trials, which the media and the general public have a first amendment right to attend, juvenile proceedings historically have been closed to the public. (*Daily Mail*, 442 U.S. at 107-09, 61 L. Ed. 2d at 407-09, 99 S. Ct. at 2673-74 (Rehnquist, J., concurring).) If the legislature can constitutionally exclude the general public from juvenile hearings, which it has done in section 1—5(6), it may also exclude the media, for the media have no greater

first amendment rights than the public at large. *Estes v. Texas* (1965), 381 U.S. 532, 540, 14 L. Ed. 2d 543, 549, 85 S. Ct. 1628, 1631; *Houchins v. KQED, Inc.* (1978), 438 U.S. 1, 16, 57 L. Ed. 2d 553, 565-66, 98 S. Ct. 2588, 2597 (Stewart, J., concurring).

Publication of the names of minor victims of sexual abuse may be hurtful for the children and their families, and would be of little or no value to the public. The legislature, however, having granted the media a statutory right to attend juvenile hearings, cannot constitutionally establish a process by which information gathered at such proceedings is subject to prior restraint. That restraint must be left to the media.

For these reasons, I would reverse the decision of the appellate court and hold that the juvenile court judge's order prohibiting the newspaper from disclosing the identities of the minors involved in this case violates the first amendment. Accordingly, I dissent.

JUSTICE HEIPLE, also dissenting:

For the reasons given by Justice Steigmann in his well-written dissent below (205 Ill. App. 3d 480, 492-97), and for the further reasons expressed by Justice Miller in his dissent to the majority opinion herein, I respectfully dissent as well. Their expressed views adequately represent my opinion in this matter.