## CIRCUIT COURT OF BEDFORD COUNTY

In re Petition of
Times-World Corporation,
Shannon D. Harrington,
Virginia Newspapers, Inc.,
Terry Scanlon,
Richmond Newspapers, Inc.,
and Rex Bowman

February 22, 1999

Case No. CL98009486-00

BY JUDGE JAMES W. UPDIKE, JR.

On November 24, 1998, a preliminary hearing was held before the Juvenile and Domestic Relations District Court of Bedford County in the cases of Commonwealth v. Randy Dwayne Ross and Commonwealth v. Keirstin D. Davis pursuant to § 16.1-269.1(B) of the Code of Virginia. In accordance with this statute, this was a preliminary hearing, rather than a transfer hearing, because Randy Dwayne Ross was charged with capital murder and Keirstin D. Davis was charged with first degree murder, and both juveniles were older than fourteen years of age. Both juveniles were also charged with certain ancillary felonies. The Honorable A. Burke Hertz, Judge Designate, presided.

Before this preliminary hearing, counsel for Randy Dwayne Ross made the following request pursuant to § 16.1-302(C):

> We submit in this particular case because of the pre-trial publicity that
> has already been engendered by these proceedings and what we might

anticipate with respect to coverage of today's proceedings that the court should use its discretion and require that the matter be closed to the media and open only to the family of the alleged victim in the case and of the accused.

(Tr. pp. 4 and 5.)

Counsel for the Randy Dwayne Ross further argued:

We submit that it would affect quite seriously — the types of coverages that are reported today — potential jury selection in this case, and that is the real basis of what we say.

(Tr. p. 5.)

Counsel for Keirstin D. Davis stated: "Judge, I would join in that motion on behalf of Keirstin Davis." (Tr. p. 6.)

The Commonwealth took no position on the issue of closure of the hearing and stated that the matter was within the discretion of the court.

The court then ruled:

Based on what counsel has represented based on § 16.1-302, and the court is very sympathetic to the public interest that this matter has engendered, the public's right to know as much as possible about matters of this nature is most important, but this court believes that the rights of the defendants as expressed by counsel transcends the right of the public to know and therefore we will order at this time that the media be excluded and that the hearing be closed except to family members and relations and that sort of thing. I do not want to inhibit these defendants' rights in any way when it comes time for jury selection; they could be harmed very seriously in many ways as counsel has expressed. We do not want that to happen and in this court's opinion it transcends the rights of the public to be fully informed in this matter.

(Tr. p. 7.)

After the court's ruling, petitioner Terry Scanlon informed the court that he had earlier requested permission to be present during the hearing but had received no reply. Petitioner Shannon D. Harrington, as well as a reporter from a local television station, requested a delay to allow their attorneys to argue the issue of closure. These requests were denied, and the preliminary hearing proceeded after exclusion of the media. (Tr. pp. 8 and 9.)

Pursuant to the disclosure requirements of § 16.1-302(C), the court released orders of closure which stated the following reason for closure of the hearing: "Motion of Defense Counsel alleging jeopardy to client's right to a fair trial." (Orders of Closure, 11/24/98.)

In response, the petitioners filed this petition for the issuance of a writ of mandamus compelling the following:

> (1) the lower court's ruling excluding the press be reversed and vacated as being violative of Virginia Code § 16.1-302, the First Amendment of the United States Constitution, and Article 1, § 12, of the Virginia Constitution; (2) the lower court be barred from excluding the press from any further proceedings in these matters; and (3) the transcript of the closed portion of the preliminary hearing be made public.

(Joint Petition for the Writ of Mandamus, p. 9.)

The petitioners further requested "such other relief as the nature of the case may require." (Joint Petition for Writ of Mandamus, p. 5.)

Counsel for the parties first argued in their memoranda of law the issue of whether closure of the preliminary hearing of November 24, 1998, violated the First Amendment of the United States Constitution, and Article 1, § 12, of the Virginia Constitution. When addressing this issue, counsel for the parties discussed at length the following decisions of the Supreme Court of the United States: *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) (*Press-Enterprise I*); and *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (*Press-Enterprise II*).

Though all of these cases are instructive, I find *Press-Enterprise II* to be the most applicable because in that case, the Supreme Court of the United States was asked "to decide whether petitioner has a First Amendment right of access to the transcript of a preliminary hearing growing out of a criminal prosecution." 478 U.S. at 3.

When deciding this issue, the Supreme Court first applied a two-prong analysis:

> In cases dealing with the claim of a First Amendment right of access to criminal proceedings, our decisions have emphasized two complementary considerations. First, because a "tradition of accessibility implies the favorable judgment of experience," *Globe Newspaper*, 457 U.S. at 605 (quoting *Richmond Newspapers, Inc. v.*

*Virginia*, 448 U.S. 555, 589 (1980) (Brennan, J., concurring in judgment)), we have considered whether the place and process have historically been open to the press and general public ... .

Second, in this setting the Court has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question. *Globe Newspaper, supra*, at 606. Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops North-West*, 441 U.S. 211, 218 (1979). Other proceedings plainly require public access. In *Press-Enterprise I*, we summarized the holdings of prior cases, noting that openness in criminal trials, including the selection of jurors, "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." 464 U.S. at 501.

479 U.S., at 8, 9.

The Supreme Court continued by stating:

If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches. But even when a right of access attaches, it is not absolute. *Globe Newspaper Co. v. Superior Court, supra*, at 606. While open criminal proceedings give assurances of fairness to both the public and the accused, there are some limited circumstances in which the right of the accused to a fair trial might be undermined by publicity. In such cases, the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access.

*Press-Enterprise II*, 478 U.S. at 9.

The Supreme Court then quoted the following from *Press-Enterprise I*:

The presumption may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court

can determine whether the closure order was properly entered. 464 U.S. at 510.

*Press-Enterprise II*, 478 U.S. at 9.

It is important to note that the preliminary hearing addressed in *Press-Enterprise II* was a preliminary hearing in the criminal prosecution of an adult defendant. When applying the two-part analysis of *Press-Enterprise II* to the present case, the first question to be answered is whether juvenile proceedings, such as the preliminary hearing in this case, "have historically been open to the press and general public" so that a "tradition of accessibility implies the favorable judgment of experience." 478 U.S. at 8.

There is apparently no guidance from the Supreme Court of the United States in this regard. As stated by the Supreme Court of Illinois, "[t]he Supreme Court has yet to determine whether the constitutional right of access in criminal trials extends to juvenile proceedings." *In re a Minor*, 205 Ill. App. 3d 480, 486, 563 N.E.2d 1069 (1990).

The Supreme Court of the United States has acknowledged that "all fifty states have statutes that provide in some way for confidentiality" of juvenile proceedings. *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 105 (1979). However, as stated in *In re a Minor, supra*, several state courts have determined that there is no historically based, constitutional presumption of openness in juvenile proceedings: *In re J.S.*, 140 Vt. 458, 438 A.2d 1125 (Vt. 1981); *Edward A. Sherman Publishing Co. v. Goldberg*, 443 A.2d 1252 (R.I. 1982); *Florida Publishing Co. v. Morgan*, 253 Ga. 467, 322 S.E.2d 233 (Ga. 1984); *Associated Press v. Bradshaw*, 410 N.W.2d 577 (S.D. 1987); and *In re T.R.*, 52 Ohio St. 3d 6, 556 N.E.2d 439 (Ohio 1990).

I have found no decision of the Virginia Supreme Court or the Virginia Court of Appeals on point, nor has any such case been presented to me. However, as I understand the experience in Virginia, juvenile proceedings have not been presumptively open. Because of this understanding and the above-cited decisions from other states, I am not persuaded that the first prong of the two-part analysis of *Press-Enterprise II* is satisfied, and I am not prepared to rule that there is a qualified constitutional right of access to juvenile proceedings in Virginia, whether pursuant to the Constitution of the United States or the Constitution of Virginia. In addition, it is my opinion that the issue before this court can be resolved by an analysis of the applicable state statute as was done in the above cited cases from other states.

Section 16.1-302(C) of the Code of Virginia provides:

> The general public shall be excluded from all juvenile court hearings and only such persons admitted as the judge shall deem proper. However, proceedings in cases involving an adult charged with a crime and hearings held on a petition or warrant alleging that a juvenile fourteen years of age or older committed an offense which would be a felony if committed by an adult shall be open. Subject to the provisions of subsection D for good cause shown, the court may sua sponte or on motion of the accused or the attorney for the Commonwealth close the proceedings. If the proceedings are closed, the court shall state in writing its reasons and the statement shall be made a part of the public record.

Code of Virginia, § 16.1-302(C).

Subsection D of § 16.1-302 is not really relevant to this discussion because it generally pertains to the right of a juvenile or an adult, charged with a crime or a traffic infraction before a juvenile court, to be present during the proceedings and to have a public trial, unless such rights are waived.

As to general principles of statutory construction, the Virginia Court of Appeals has stated:

> The principles of statutory construction require us to ascertain and give effect to the legislative intent ... . The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results ... . Where possible, a statute should be construed with a view toward harmonizing it with other statutes.

*Branch v. Commonwealth,* 14 Va. App. 836, 839, 419 S.E.2d 422 (1992) (citations omitted).

When determining the legislative intent of § 16.1-302(C), and when attempting to harmonize this statute with other statutes, I feel it important to review briefly the legislative history of § 16.1-302. This statute was amended by Chapters 755 and 914 of the 1996 Acts of Assembly. In addition, these chapters also amended and reenacted forty-nine other statutes pertaining to juvenile offenders, the trial of juveniles as adults, and records and other matters concerning juveniles. Four new statutes were also enacted by Chapters 755 and 914 concerning juveniles and juvenile proceedings. As a consequence, the focus of juvenile law was altered, and in many respects, juveniles fourteen years of age or older charged with certain violent felonies are now treated more like adult offenders.

For example, before July 1, 1996, § 16.1-227 provided in pertinent part:

> It is the intention of this law that in all proceedings the welfare of the child and the family is the paramount concern of the Commonwealth ... .

1996 Acts of Assembly, Chapters 755 and 914.

As a consequence of the 1996 amendment, § 16.1-227 now provides in pertinent part:

> It is the intention of this law that in all proceedings the welfare of the child and the family, *the safety of the community and the protection of the rights of victims* are the paramount concerns of the Commonwealth ... .

Code of Virginia, § 16.1-227 (emphasis added).

Before July 1, 1996, § 16.1-269.1 stated that when a juvenile fourteen years of age or older was charged with an offense that would be a felony if committed by an adult, the juvenile court was to conduct a transfer hearing, upon proper notice, and determine not only probable cause, but find, in accordance with certain stated factors, whether the juvenile was a proper person to remain within the jurisdiction of the juvenile court. There were, however, limited exceptions to the last requirement when the juvenile was charged with certain violent offenses.

After the 1996 amendment, § 16.1-269.1(B) provides:

> The juvenile court shall conduct a preliminary hearing whenever a juvenile fourteen years of age or older is charged with murder in violation of §§ 18.2-31, 18.2-32, or 18.2-40, or aggravated malicious wounding in violation of § 18.2-51.2.

Code of Virginia, § 16.1-269.1(B).

Section 16.1-269.1(D) now provides in pertinent part:

> Upon a finding of probable cause pursuant to a preliminary hearing under subsection B or C, the juvenile court shall certify the charge, and all ancillary charges, to the grand jury. Such certification shall divest the juvenile court of jurisdiction as to the charge and any ancillary charges.

> If the court does not find probable cause to believe that the juvenile has committed the violent juvenile felony as charged in the petition or warrant or if the petition or warrant is terminated by dismissal in the juvenile court, the attorney for the Commonwealth may seek a direct indictment in the circuit court.

Code of Virginia, § 16.1-269.1(D).

As a consequence, when a juvenile fourteen years of age or older is charged with murder, he now receives a preliminary hearing in juvenile court, rather than a transfer hearing, in much the same fashion as an adult charged with murder receives a preliminary hearing in general district court.

I also feel it pertinent to this analysis that § 16.1-301 was amended by the General Assembly in 1997. This statute provides in pertinent part:

> The court shall require all law-enforcement agencies to take special precautions to ensure that law-enforcement records concerning a juvenile are protected against disclosure to any unauthorized person.

Code of Virginia, § 16.1-301(A).

In 1997, the last sentence of this subsection was amended to read as follows:

> Such records with respect to such juvenile shall not be opened to public inspection nor their contents disclosed to the public unless a juvenile fourteen years of age or older is charged with a violent juvenile felony as specified in subsection B of § 16.1-269.1.

Code of Virginia, § 16.1-301(A).

Subsection B of § 16.1-269.1 is, of course, the statute pursuant to which the preliminary hearing in question was conducted.

It is not necessary or appropriate to discuss all of the amendments enacted by Chapters 755 and 914 of the 1996 Acts of Assembly pertaining to juveniles and juvenile proceedings, or all subsequent amendments. However, as previously stated, juveniles fourteen years of age or older who are charged with certain violent felonies are now treated more as adults charged with such offenses are treated. I therefore believe it important that § 16.1-302, regarding public access to juvenile proceedings, was also amended by Chapters 755 and 914 of the 1996 Acts of Assembly.

Before the amendment of 1996, § 16.1-302(C) provided in pertinent part:

> The general public shall be excluded from all juvenile court hearings and only such persons admitted as the judge shall deem proper, except that in any hearing held for the purpose of adjudicating the alleged violation of any criminal law, or law defining a traffic infraction, the child or adult so charged shall have a right to be present and shall have the right to a public hearing unless expressly waived by such person.

1996 Acts of Assembly, Chapters 755 and 914.

Though § 16.1-302(C) still provides that the "general public shall be excluded from all juvenile court hearings and only such persons admitted as the judge shall deem proper," the following qualification was added to this subsection by the amendment of 1996:

> However, proceedings in cases involving an adult charged with a crime and hearings held on a petition or warrant alleging that a juvenile fourteen years of age or older committed an offense which would be a felony if committed by an adult shall be *open*. Subject to the provision of subsection D *for good cause shown*, the court may sua sponte or on motion of the accused or the attorney for the Commonwealth close the proceedings. If the proceedings are closed, *the court shall state in writing its reasons* and *the statement shall be made a part of the public record*.

Code of Virginia, § 16.1-302(C) (emphasis added).

I also feel it important that § 16.1-302(C) not only provides that hearings on a felony charge against a juvenile at least fourteen years of age "shall be open," but "cases involving an adult charged with a crime ... shall be open." The requirements for closure in both instances are the same, and again, there is similar treatment of cases involving adults charged with a crime and hearings involving juveniles at least fourteen years of age charged with a felony.

When harmonizing amended § 16.1-302(C) with the other statutes amended in 1996, and when applying to § 16.1-302(C) its "plain, obvious, and rational meaning," as required by *Branch v. Commonwealth, supra,* I am convinced that the legislature intended that a preliminary hearing of a juvenile who is at least fourteen years of age and charged with a felony shall be open to the public unless good cause is shown. I am equally convinced that the General Assembly did not intend in such proceedings the decision of

admitting or excluding the public to be merely a matter of judicial discretion. Otherwise, the 1996 amendment to § 16.1-302(C) becomes meaningless.

Before 1996, § 16.1-302(C) required exclusion of the public from all juvenile hearings except such persons "as the judge shall deem proper." I interpret the quoted phrase to mean that the juvenile court judge had the discretion of determining, before 1996, who could be present during juvenile court hearings. Indeed, this phrase still applies to a juvenile who is not fourteen years of age or not charged with a felony regardless of age. Nevertheless, interpreting § 16.1-302(C) in its present form as granting the juvenile court judge the discretion of determining who may be present during hearings such as the one in question extends to the juvenile court judge the same authority had before the 1996 amendment. If the General Assembly did not intent to change the meaning of § 16.1-302(C) by its amendment of 1996, why was the statute amended? As stated in *Branch, supra,* "a statute should never be construed so that it leads to absurd results." 14 Va. App. at 839.

Rather than closure of hearings such as the one in question being a matter of judicial discretion, it is my opinion that the General Assembly intended by its 1996 amendment of § 16.1-302(C) to require such hearings to be open unless the judge makes and articulates specific findings of particularized prejudice resulting to the juvenile should the hearing be open to the public. Upon closure, such findings must be made public. Indeed, § 16.1-302(C) specifically states that such hearings "shall be open," except "for good cause shown," and "[i]f the proceedings are closed, the court shall state in writing its reasons and the statement shall be made a part of the public record."

Upon my examination of the partial transcript of the preliminary hearing of November 24, 1998, I note that counsel for Randy Dwayne Ross stated that his client's right to a fair trial could be jeopardized by an open hearing because pretrial publicity would "affect quite seriously" the "potential jury selection in the case." (Tr. p. 5.) No reasons or justifications for this conclusion were offered.

Counsel for Keirstin D. Davis simply joined in this motion on behalf of his client.

The juvenile court judge, in his rulings from the bench, stated his belief that "the rights of the defendants as expressed by counsel transcend the right of the public to know." (Tr. p. 7.) The judge also stated: "I do not want to inhibit these defendants' rights in any way when it comes time for jury selection, they could be harmed very seriously in many ways as counsel has expressed." (Tr. p. 7.) Again, conclusions are stated, but nothing is stated in support of these conclusions.

In the Orders of Closure, which were made public, the following is stated as the reason for closure: "Motion of defense counsel alleging jeopardy to client's right to a fair trial." (Orders of Closure, 11-24-98.)

It is my opinion that conclusory statements, without articulation of reasons or findings in support of such conclusions, do not satisfy the requirements for closure set forth in § 16.1-302(C), and do not constitute "good cause shown" within the context of that statute.

The efforts of the juvenile court judge to protect the defendants in this case from the effects of pretrial publicity are commendable, without question. However, when balancing a defendant's right to a fair trial against the public right of access, the Supreme Court of the United States has stated:

> It is also important to remember that these interests are not necessarily inconsistent. Plainly, the defendant has a right to a fair trial but, as we have repeatedly recognized, one of the important means of assuring a fair trial is that the process be open to neutral observers.

*Press-Enterprise II*, 478 U.S. at 7.

In my opinion, whether the qualified right of access has a constitutional basis or a statutory basis, this statement of the Supreme Court applies with equal force.

My ruling in this case is narrow and confined to the language of § 16.1-302(C). I do not rule that a preliminary hearing such as the one in this case cannot be closed for reasons of pretrial publicity. Indeed, even the right of access guaranteed by the First Amendment to the Constitution of the United States is not absolute, as acknowledged in all of the cited decisions of the United States Supreme Court. Instead, in my opinion, juvenile hearings such as the one in question may be closed to the public, in accordance with § 16.1-302(C), upon specific findings of good cause, based upon particularized prejudice to the juvenile, and these findings must be articulated, reduced to writing, and then made public. I do not believe a preliminary hearing, even though attended by members of the media, in and of itself constitutes good cause for closure under § 16.1-302(C). Otherwise, I fail to understand why the General Assembly would require, pursuant to § 16.1-269.1(B), a preliminary hearing in cases such as this, then require, pursuant to § 16.1-302(C), that such hearings be open, absent good cause shown, if an open preliminary hearing is itself sufficient reason for closure.

I am also concerned that in the judge's rulings from the bench, he stated: "We will order at this time that the media be excluded and that the hearing be closed except to family members and relations and that sort of thing." (Tr. p.

7.) As repeatedly stated, § 16.1-302(C) requires hearings of the nature of the preliminary hearing in this case to be open, and upon "good cause shown," the proceedings may be closed. In my opinion, this statute does not authorize a partially closed hearing. I recognize the limited discretion accorded a juvenile court judge to admit in a closed hearing a victim and an adult chosen by a juvenile victim pursuant to § 16.1-302.1. I also recognize the inherent authority of the court to exclude persons from proceedings for such reasons as disruption. Of course, the parent or guardian of a child charged with delinquency may be present. Nevertheless, in this case, the juvenile court judge apparently excluded the media, then admitted "family members and relations and that sort of thing." (Tr. p. 7.) This approach appears to be more in conformity with the previously discussed discretion accorded a juvenile court judge before July 1, 1996, and the discretion that apparently still exists in hearings involving juveniles under the age of fourteen years or those not charged with a felony, of any age. In those instances, as previously discussed, the juvenile court has the discretion of admitting "such persons as the judge shall deem proper." § 16.1-302(C). It is my opinion that the juvenile court applied the wrong standard when excluding the media from the preliminary hearing in this case while admitting "family members and relations and that sort of thing."

I will briefly address the arguments of the respondent concerning the appropriateness of mandamus as a remedy in this case. The respondent argues that mandamus is not an available remedy because no constitutional right of access exists and the decision to close the preliminary hearing was an exercise of discretion, and not a ministerial act. The respondent further argues that the issues presented are now moot. Though I have not found a qualified constitutional right of access to hearings such as the one in question, I have found a qualified statutory right of access pursuant to § 16.1-302(C). In my opinion, the same analysis applies, whether the qualified right of access has a constitutional basis or a statutory basis. Consequently, I refer to the following statement of the Court of Appeals of Virginia:

> While we agree that mandamus is an extraordinary writ and will lie only where there is a clear and unequivocal duty of a public official to perform the act in question, for reasons implicit in *Times-World*, we believe mandamus rather than appeal is the proper means to challenge the closure in a pending criminal trial. In *Times-World*, we recognize that appeal of a closure order in such a case generally would not permit the issue to be timely addressed by the appellate court because of the typically short duration of a trial, and, thus, the

matter would evade review. *Times-World*, 7 Va. App. 323-33, 373 S.E.2d at 477. Also, we noted that the issue of denial of public access is capable of repetition in other cases. *Id.* Similarly, the United States Fourth Circuit Court of Appeals has concluded that "[m]andamus, not appeal, 'is the preferred method of review for orders restricting press activity related to criminal proceedings'." *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 63 (4th Cir. 1989) (quoting *In re Washington Post Co.*, 807 F.2d 383, 388 (4th Cir. 1986)). Accordingly, we hold that mandamus is the proper vehicle for challenging the trial court's closure order *arising from a pending criminal trial.*

*In re Worrell Enterprises, Inc.*, 14 Va. App. 671, 675, 419 S.E.2d 271, 274 (1992) (emphasis in original).

It is my further opinion that appropriate interpretation and application of § 16.1-302(C) and application of the correct standard pursuant to that statute constitute ministerial duties and not discretionary acts.

I therefore grant the Petition for a Writ of Mandamus, and I vacate the Orders of Closure entered by the Juvenile and Domestic Relations District Court of Bedford County on November 24, 1998, in the cases of Commonwealth v. Randy Dwayne Ross and Commonwealth v. Keirstin D. Davis.

I take no action concerning petitioners' request that the lower court be barred from excluding the press from any further proceedings in these matters. Pursuant to § 16.1-269.1(D), the jurisdiction of the juvenile court was divested as to the felony charges in these cases upon certification to the grand jury.

Concerning the petitioners' request that the transcript of the preliminary hearing in these cases be made public, I note that this preliminary hearing was transcribed in accordance with the order that I entered on behalf of the Circuit Court of Bedford County on September 30, 1998, pursuant to § 19.2-185. This statute provides in pertinent part:

> The judge of the court of record to which the case may be or has been certified may order the testimony of the witnesses at the preliminary hearing to be reduced to writing.

Code of Virginia, § 19.2-185.

I therefore determine that I have authority over this transcript, and, to accord fully the remedy awarded petitioners, I direct the clerk of this court to request Central Virginia Reporters to provide this court with one copy of the

transcript of the preliminary hearing of November 24, 1998, in the cases of Commonwealth v. Randy Dwayne Ross and Commonwealth v. Keirstin D. Davis. I further direct the clerk of this court to file this transcript in the public record of this court in the case of Commonwealth v. Randy Dwayne Ross. A notation of such filing will be placed in the public record of this court in the case of Commonwealth v. Keirstin D. Davis. Payment for this transcript will be at public expense and taxed as costs, if appropriate under applicable statutes.

Finally, the order incorporating my rulings in this matter will be certified to Central Virginia Reporters with the instruction that a copy of the transcript of this preliminary hearing be made available to any member of the general public, including the media, who pays Central Virginia Reporters the cost for same.

Upon entry of the order, copies shall be certified to the Juvenile and Domestic Relations District Court of Bedford County and to all counsel of record in this case and the related criminal cases. Copies of the order and this opinion shall also be filed in the cases of Commonwealth v. Randy Dwayne Ross and Commonwealth v. Keirstin D. Davis.