2023 IL App (1st) 231349
Opinion filed: November 9, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-1349

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* MAR. S. JR. and MAC. S., | ) | Appeal from the |
| | ) | Circuit Court of |
| Minors- Appellees, | ) | Cook County |
| | ) | |
| | ) | |
| (The People of the State of Illinois | ) | |
| | ) | Nos. 19 JA833 |
| Petitioner-Appellee, | ) | 19 JA835 |
| | ) | |
| v. | ) | |
| | ) | |
| Christina H., | ) | Honorable |
| | ) | Diane Pezanoski, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**OPINION**

¶ 1    Respondent Christina H., the mother of Mar. S. Jr. (Mar.) and Mac. S. (Mac.), brings an

interlocutory appeal under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), seeking

vacatur of an order preventing her from copying the transcripts from dispositional and permanency

hearings for her minor children and sharing them on social media sites. We affirm.

¶ 2    On August 2, 2019, the State filed petitions for adjudication of wardship alleging that 12-year-old Mar. and 3-year-old Mac. were neglected based on a lack of necessary care and an injurious environment and that they were abused based on a substantial risk of injury. Mar. also was abused because he suffered from excessive corporal punishment.

¶ 3    The State alleged that respondent had three prior indicated cases. An intact case was opened in February 2019 after Mar. was found with facial injuries caused by respondent. The State also alleged that Mar. and Mac. were left home alone for several hours almost daily. Mar. had untreated mental health issues and was left to babysit his siblings. The Department of Children and Family Services (DCFS) took protective custody of Mar. and Mac. after they were found outside at night, walking the streets alone.

¶ 4    On December 3, 2021, the court entered an adjudication order finding that Mar. and Mac. were abused or neglected based on a lack of necessary care, an injurious environment, and substantial risk of injury. Following a dispositional hearing held on January 14, 2022, the court adjudicated Mar. and Mac. wards of the court and found respondent unable to care for them.

¶ 5    The court also held a permanency hearing on January 14, 2022, and entered a permanency goal for Mar. of substitute care pending independence. Mac.'s permanency goal was to return home within 12 months. On December 2, 2022, Mac.'s permanency goal changed to private guardianship.

¶ 6    On March 3, 2023, the public guardian filed an emergency motion for a protective order, alleging:

> "[Respondent] uses the internet to publicly post videos of parent-child visits, Administrative Case Reviews, Child and Family Team Meetings, and confidential court proceedings. The confidential court proceedings and Child and Family Team Meetings

were illegally taped without participants' knowledge or consent. Among other online sites, the videotaped court proceedings, Child and Family Team Meetings, therapy sessions and parent- child visits can be found on her YouTube channel."

¶ 7    On March 7, 2023, the court held a hearing on the emergency motion for a protective order. The public guardian informed the court that respondent posted videos of court hearings without consent of the parties. These videos identified Mar. and Mac. as being under the guardianship of DCFS. The public guardian argued that Mar. and Mac.:

"are not in this court system for any fault of their own. They are here because of the abuse and neglect. *** They are not juvenile [delinquents] and they don't have, they should not be exposed to the public as being court-involved and have their privacy revealed to the general public."

¶ 8    The public guardian requested that the court order the immediate removal of all such videos.

¶ 9    The State agreed with the public guardian and provided multiple screen shots from photographs/videos depicting courtroom proceedings involving Mar. and Mac. as well as from videos of a child and family team meeting, an administrative case review, and a therapy session. These videos were posted on respondent's Facebook page, as well as on TikTok and on her YouTube channel. The court noted its concern that the videos identified Mar. and Mac as being "court-involved and being in the custody of DCFS" even though "these court proceedings are confidential."

¶ 10    The court ordered the removal of the offending videos from the social media sites, and ordered respondent to refrain from posting any similar videos or other information in the future that would publicly identify Mar. and Mac. as being court-involved and in the custody of DCFS.

The court specifically ordered respondent not to record any court hearings, child and family team meetings, or administrative case reviews involving Mar. and Mac.

¶ 11    The court held a permanency hearing on June 30, 2023. Matthew Bauman, a supervisor with the National Youth Advocate Program, testified that he was assigned to Mar.'s case. Mar. has been in three different foster homes and attempted to set fire to one of those homes in December. He eloped in April and was gone for about three or four weeks before being found by police in central Illinois.

¶ 12    As of the date of the hearing, Mar. was 16-years-old, going into his junior year of high school, and living with his uncle. Mar. has unsupervised day and overnight visits with respondent. Bauman spoke with Mar.'s caseworker, who said that Mar.'s placement with his uncle was safe and appropriate and that his visits with respondent have been going well.

¶ 13    Bauman testified that respondent has completed all services except for individual therapy, but that her therapist says she is "making progress." Both respondent and Mar. want to live with each other. Bauman recommended that Mar. be returned home to respondent. The public guardian also asked the court to return Mar. to respondent's care and custody under an order of protection. The State opposed Mar.'s return to respondent.

¶ 14    The court ordered that Mar. be returned to respondent under the supervision of the probation office. The court also ordered respondent to cooperate with DCFS and to comply with the terms of any aftercare plan.

¶ 15    The court then proceeded to the permanency hearing for Mac. The court noted that Mac. has had five different placements and that he had last been placed in a nonrelative foster home. Respondent informed the court that Mac. no longer was at the foster home and instead had been placed in the Lawrence Hall residential facility. Lawrence Hall has suspended any visitation

between respondent and Mac. because Mac. has been "acting out" during visits and no longer wishes to see respondent.

¶ 16    Respondent sought a continuance of the permanency hearing so that Lawrence Hall could conduct a staffing to address how to best reinstate respondent's visits with Mac. The court granted the continuance and ordered that a staffing be held within 21 days.

¶ 17    The State then informed the court that the court coordinator had received an e-mail from "someone in mediation" indicating that respondent was asking for transcripts of prior proceedings and wanting to know "if there was an order in place limiting her access to obtaining transcripts." The court inquired of respondent's attorney, who stated that respondent was acting on her own behalf in seeking transcripts from the dispositional and permanency hearings held on January 14, 2022.[1]

¶ 18    The State argued that since respondent previously had published videos of confidential court proceedings on social media sites, the court should take special care to ensure that she not similarly publish the transcripts of the confidential January 14, 2022, hearings. Accordingly, the State requested that the court specifically order respondent not to share those transcripts "with anybody."

¶ 19    Respondent's attorney stated that respondent has a large support network of persons helping her deal with the trauma of being in the child welfare system and that she would want to share the transcripts with those particular persons. She would not post the transcripts to Facebook or other social media sites where they could be publicly accessed.

---

[1]Respondent misspoke by identifying the date of those hearings as January 14, 2021; however, the record indicates that the hearings were held in 2022.

¶ 20    The State suggested that respondent's attorney obtain the transcripts and then respondent could view them in his office.

¶ 21    The court made an oral ruling allowing respondent to view the transcripts in her attorney's office, where she could be joined by "professional people and clinical people," such as her therapist, who would review the transcripts with her.

¶ 22    On July 8, 2023, the court entered a written order *nunc pro tunc* to June 30, 2023, stating:

> "Mother *** may view copies of transcripts as provided by her attorney of record, Mr. Steven Pick. Mother shall not copy the transcripts, photograph the transcripts, or duplicate them in any way. Mother shall not show the transcripts to anyone. Mother shall not share the transcripts via any means, including but not limited to by posting them on the internet or social media."

¶ 23    Respondent filed this Rule 307(a)(1) interlocutory appeal. Rule 307(a)(1) provides that an appeal may be taken from an interlocutory order granting an injunction. Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). An injunction is defined as " 'a judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ, the most common sort of which operate as a restraint upon the party in the exercise of his real or supposed rights.' " *In re A Minor*, 127 Ill. 2d 247, 261 (1989) (Minor I) (quoting *Wangelin v. Goe*, 50 Ill. 459, 463 (1869)). A protective order, such as the one entered here, barring a party from copying or publicizing transcripts is an injunctive order appealable under Rule 307(a)(1). See, *e.g.*, *In re Daveisha C.*, 2014 IL App (1st) 133870 (a protective order barring the public guardian from copying a victim sensitive interview was an injunctive order subject to a Rule 307(a)(1) appeal); *Minor I*, 127 Ill. 2d at 263 (interlocutory restraints upon publication of information are injunctive orders under Rule 307(a)(1)). Our scope of review is limited to

determining whether the circuit court abused its discretion in granting the requested interlocutory injunctive relief. *In re J.S.*, 267 Ill. App. 3d 145, 147 (1994).

¶ 24 Respondent argues that the court abused its discretion because its injunctive order was a prior restraint of speech that violated her first amendment rights. Respondent forfeited review by failing to raise this argument below. See *Flood v. Wilk*, 2019 IL App (1st) 172792, ¶ 29. However, forfeiture is a limitation on the parties and not the appellate court (*Duniver v. Clark Material Handling Co.*, 2021 IL App (1st) 200818, ¶ 18), and we choose to address the issue on the merits.

¶ 25 The public guardian argues that there was no constitutional violation, citing *Minor I*, *In re Minor*, 149 Ill. 2d 247 (1992) (*Minor II*), and *J.S.* in support. We proceed to briefly discuss those cases.

¶ 26 In *Minor I*, 127 Ill. 2d at 251, the circuit court entered an order during the course of a juvenile proceeding banning a newspaper from publishing the name of a minor who had been charged in connection with a fatal shooting. The newspaper had learned the minor's identity through "ordinary reportorial techniques," and the minor's identity was already in the public domain. *Id.* at 250. The circuit court claimed to act under the authority of section 701-20 of the Juvenile Court Act, which provided that the court " 'may, for the minor's protection and for good cause shown, prohibit any person or agency present in court from *** disclosing the minor's identity.' " (Emphasis omitted.) *Id.* at 263-64 (quoting Ill. Rev. Stat. 1983, ch. 37, ¶ 701-20(6) (now codified as amended as the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-5(6) (West 2022)))).

¶ 27 On appeal, the newspaper argued that the circuit court's order constituted a prior restraint upon speech. *Minor I*, 127 Ill. 2d at 264. The supreme court summarized the governing law:

"[A]ny prior restraint upon speech, while not unconstitutional *per se*, bears a heavy presumption against its validity. [Citation.] *** In the context of pending judicial proceedings, a judicial order restraining speech will not be held invalid as a prior restraint if it is: (1) necessary to obviate a 'serious and imminent' threat of impending harm, which (2) cannot adequately be addressed by other, less speech-restrictive means." *Id.* at 265.

¶ 28 The supreme court held that the circuit court's proscription of the publication of the minor's name in connection with the juvenile proceeding was unconstitutional where the publisher learned the identity of the minor through routine, reportorial techniques and where the publication of the minor's name did not pose any serious and imminent threat of harm to the his well-being. *Id.* at 270.

¶ 29 *Minor II,* 149 Ill. 2d at 248, was an interlocutory appeal from an order entered in two juvenile court proceedings, each involving a minor child who was the victim of physical and sexual abuse by a parent. Prior to commencement of an adjudicatory hearing, the circuit court entered an order refusing to permit a newspaper reporter from attending the proceedings unless they signed a pledge not to reveal the identity of the minors. *Id.* On appeal, the newspaper argued that the court's order constituted an unconstitutional prior restraint on speech and cited in support *Minor I. Id.* at 253-54. The supreme court determined that *Minor I* was inapposite because in *Minor I* the juvenile was before the court in a fatal shooting, whereas the juveniles in *Minor II* were before the court as victims of physical and sexual abuse by a parent. *Id.* at 254.

¶ 30 The supreme court held that the State has an interest in the nondisclosure of the minor victims' identities in its role as *parens patriae* and that "the danger of public disclosure and the probability of irreparable adverse effects which such disclosure would entail [is] a compelling State interest." *Id.* Also, the minor victims have a compelling interest against the invasion of their

privacy under article I, section 6, of the Illinois Constitution, which provides that people "shall have the right to be secure in their persons, houses, papers and other possessions against \*\*\* invasions of privacy" (Ill. Const. 1970, art. I, § 6); and article I, section 12, which provides that every person shall find "a certain remedy in the laws for all injuries and wrongs which he receives to his \*\*\* privacy" (*id.* § 12). The supreme court further observed:

> "The minor victims in this case have done nothing to limit or diminish their constitutional right to be free from governmental *and* nongovernmental invasions of their privacy. They are not juvenile delinquents. They are not participating in the juvenile proceedings begun on their behalf through their own free will. They were victims of abuse by a parent. They were thrust into the juvenile system by actions of third parties, not by their own actions. Under these facts, we find that the minor victims have a compelling interest in their right to be free from invasions of their privacy. Public disclosure of their identities would surely invade their right to privacy in a most egregious manner." (Emphasis in original.) *Minor II*, 149 Ill. 2d at 256-57.

¶ 31 The supreme court then weighed the minors' and State's compelling interests in nondisclosure against the newspaper's need for free and unfettered expression and found no compelling need for free and unfettered disclosure of the minor victims' identities. *Id.* at 257.

¶ 32 In *J.S.*, 267 Ill. App. 3d at 147, DCFS took protective custody of J.S. following his mother's report that he had been sexually abused by his father. The father brought a petition seeking sole custody of J.S., and the State filed a petition for adjudication asking that J.S. be declared a neglected minor and made a ward of the court. *Id.* Following a hearing, the circuit court ruled that J.S. was a neglected minor and awarded the father sole custody. *Id.* The court found that the mother had caused J.S.'s emotional environment to be injurious through her obsession with proving that

his father sexually abused him. *Id.* The mother physically abused J.S. for the purpose of attempting to prove that the father sexually abused him. *Id.* The evidence showed that the father did not sexually abuse J.S. *Id.*

¶ 33 The circuit court entered a gag order prohibiting the parties and their attorneys from discussing the facts of the case with the news media. *Id.* at 146-47. On appeal, the mother argued that the gag order violated her constitutional right to free speech. *Id.* at 147. We noted that, as in *Minor II*, the minor was an innocent child victim and not a juvenile delinquent, and we held:

> "[T]he record indicates that J.S. has suffered emotional trauma because of the strife between the parents. Airing that strife in the media could only exacerbate the problem and surely would constitute an egregious invasion of the child's privacy, forbidden by *Minor II*. On the other side of the balance is the 'need for unfettered speech.' We fail to see the *necessity* of discussing the details of this case with the news media. Weighing the factors outlined in *Minor II*, we find that J.S.'s rights to privacy and to be free from further emotional trauma outweigh the mother's right to take her case to the press." (Emphasis in original.) *Id.* at 150.

¶ 34 *Minor II* and *J.S.* teach that where a minor is participating in juvenile proceedings, not because of any delinquent or criminal conduct, but because he was a victim of abuse or neglect, both the minor and the State have a compelling interest that the minor's identity be protected from publication. *Minor II* and *J.S.* are in accordance with section 1-8(A) of the Act (705 ILCS 405/1-8 (West 2022)), which provides for the confidentiality of juvenile court records: "All juvenile court records which have not been expunged are sealed and may never be disclosed to the general public or otherwise made widely available." See *In re K.D.*, 279 Ill. App. 3d 1020 (1996) (holding that

the general purpose of the Act is to protect the interests of minors, which includes protecting the confidentiality of the minor's identity).

¶ 35    In the present case, the minors Mar. and Mac. were *not* juvenile delinquents who were charged with criminal conduct; rather, they were thrust into the juvenile system due to the alleged abuse and neglect of their mother. As in *Minor II* and *J.S.*, Mar. and Mac. each have a compelling interest against the invasion of their privacy and the disclosure of their identities under article I, sections 6 and 12 of the Illinois Constitution and section 1-8(A) of the Act, and they have done nothing to limit or diminish their constitutional and statutory rights to be free from governmental and nongovernmental invasions of their privacy. Also as in *Minor II* and *J.S.*, the State has a compelling interest in protecting the minors' privacy and preserving the nondisclosure of their identities in its role as *parens patriae*. The doctrine of *parens patriae* recognizes the general power and obligation of the government to protect minors from abuse and neglect and is codified in the Act, which "specifically charges the circuit court with the duty to act in the best interests of the minor and for the minor's own protection." *In re D.S.*, 198 Ill. 2d 309, 328 (2001).

¶ 36    *Minor II* and *J.S.* also teach that the minors' right to privacy must be balanced against respondent's general need for unfettered speech. The "unfettered speech" at issue here relates to respondent's desire to copy and share transcripts from the dispositional and permanency hearings held on January 14, 2022. The transcripts would include confidential information regarding Mar. and Mac.'s identities as well as confidential information regarding their placement and medical and mental health. The publication of the transcripts potentially could exacerbate the emotional harm already suffered by the minors as evidenced by Mar.'s attempt to set fire to a foster home and Mac.'s acting out during visits with respondent. The court struck a balance between the minors' compelling privacy rights and emotional needs against respondent's need for unfettered

speech, by allowing respondent to view the requested transcripts in her attorney's office but preventing her from copying or sharing the transcripts with the general public on the internet and social media. The court's order did not constitute an abuse of discretion.

¶ 37 Respondent argues that the court's written order goes too far in preventing her from sharing the transcripts with her therapist. However, in its oral ruling, the court stated that when viewing the transcripts in her attorney's office, respondent could be joined by "professional people and clinical people" such as her therapist. To the extent that the court's oral pronouncement conflicts with the written order, the oral pronouncement prevails. *In re R.W.*, 371 Ill. App. 3d 1171, 1173 (2007). Respondent may view the transcripts in her attorney's office, accompanied by her therapist. However, respondent may not copy the transcripts or publicize them such as by posting them on the internet or on social media sites.

¶ 38 Respondent also argues that the court should have used a less restrictive means of protecting the minors' privacy, such as by ordering that their names be redacted from the transcripts prior to their dissemination. We disagree. *In re D.P.*, 2011 IL App (1st) 111631, is informative. In *D.P.*, the respondent mother of minors D.P. and D.V. appealed the trial court's order restricting her access to case documents from the minors' wardship adjudication cases. *Id.* ¶ 1. The order specified in pertinent part that she only could review her attorney's case materials in the attorney's presence for 31 days after entry of the order. *Id.* The order was entered pursuant to section 2-22 of the Act (705 ILCS 405/2-22(2) (West 2022)), which limits respondent's access to the case file and states that the court may order that documents containing reports prepared for the use of the court "need not be submitted to inspection, or that sources of confidential information need not be disclosed except to the attorneys for the parties." We held:

"[T]he court did not abuse its discretion in issuing the injunction limiting respondent's access to the case file. The record suggests that respondent was posting damaging, embarrassing and confidential information about her children on the Internet. It was within the trial court's discretion to take action to prevent the disclosure and publication of confidential information and case materials. The limitations imposed on respondent's access to the case materials were reasonable, and we believe the court's order limiting respondent's review of the case records was a proper exercise of its judicial discretion."

*D.P.*, 2011 IL App (1st) 111631, ¶ 5.

¶ 39    Although the instant case does not involve access to the case file, it does involve access to transcripts of juvenile court proceedings containing confidential information about the minors. Similarly to *D.P.*, given respondent's history of posting videos of confidential court proceedings involving her children on the Internet, the circuit court acted reasonably by requiring her to review the requested transcripts at her attorney's office without copying, distributing, or posting them on the Internet. The court's order allowed respondent access to the transcripts while minimizing the chances of further invasions of the minors' privacy. We find no abuse of discretion.

¶ 40    Respondent next argues that the court's order preventing her from copying the transcripts violates section 1-8(A)(1) of the Act, which states:

"Inspection and copying of juvenile court records relating to a minor who is the subject of a proceeding under this Act shall be restricted to the following:

(1) The minor who is the subject of record, *the minor's parents*, guardian, and counsel." (Emphasis added.) 705 ILCS 405/1-8(A)(1)(West 2022).

¶ 41    However, section 1-8(C)(0.3) states:

"In determining whether juvenile court records should be made available for inspection and whether inspection should be limited to certain parts of the file, *the court shall consider the minor's interest in confidentiality* and rehabilitation over the requesting party's interest in obtaining the information." (Emphasis added.) *Id.* § 1-8(C)(0.3).

¶ 42    As we have discussed, the circuit court here considered the minors' interest in confidentiality and privacy when restricting respondent to inspecting (without copying) the transcripts at her attorney's office. The circuit court's consideration of the minors' confidentiality and privacy interests was proper under section 1-8(C)(0.3) and its resultant order was not an abuse of discretion.

¶ 43    Next, respondent argues that she received no prior notice that the State would be seeking an injunctive order preventing her from copying and disseminating the transcripts and that in ordering the injunction, the circuit court did not hear any witnesses or accept any briefs. Respondent argues that the failure to receive prior notice or an "orderly hearing" deprived her of procedural due process.

¶ 44    Procedural due process is met "by having an orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect his rights." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 244 (2006). Parents in juvenile court proceedings have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses and to be represented by counsel. See 705 ILCS 405/1-5(1) (West 2022). In deciding whether a party received a meaningful opportunity to be heard, we balance (i) the private interest affected by the official action, (ii) the risk of an erroneous deprivation of such interest through the procedures used and the probable value of additional procedural safeguards, and (iii) the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335

-14-

(1976). A procedural due process claim presents a legal question subject to *de novo* review. *People v. Cardona*, 2013 IL 114076, ¶ 15.

¶ 45    Respondent was not deprived of procedural due process, as it was *her* request for transcripts that precipitated the hearing at issue. Respondent was represented by counsel when the court considered her request, and she did not object to the court also considering the State's motion for an injunctive order at the same time, nor did she request a briefing schedule or further time to prepare or that any witnesses be called. Instead, she indicated a desire for an immediate resolution of the issue by arguing for denial of the injunctive order and by asking that no limitations be put on her ability to view the transcripts while accompanied by her support network, including her therapist. The court subsequently entered the injunctive order at issue, after balancing the minors' privacy interest and the State's interest in the minors' privacy in its role as *parens patriae* against respondent's stated need for the transcripts and allowing all parties to be heard on their respective arguments.

¶ 46    On this record, the court complied with *Mathews* as respondent received sufficient notice and a meaningful opportunity to be heard both on her request for transcripts and on the State's motion for an injunctive order. As such, respondent was not denied procedural due process.

¶ 47    Further, respondent has not shown how she was prejudiced by the process afforded her, as she ultimately was granted her request that she and her therapist[2] be allowed to view the transcripts, which is all she asked of the circuit court. In the absence of any prejudice, respondent's due process

---

[2] As discussed, to the extent that the written order conflicted with the oral ruling allowing respondent's therapist to view the transcripts with her at the attorney's office, the oral ruling controls.

claim fails. See *Snow v. Chicago Transit Authority*, 2022 IL App (1st) 201217, ¶ 54 ("A court will find a due process violation only if there is a showing of prejudice.").

¶ 48    For all the foregoing reasons, we affirm the circuit court.

¶ 49    Affirmed.

---

***In re Mar. S.*, 2023 IL App (1st) 231349**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 19-JA-833, 19-JA-835; the Hon. Diane Pezanoski, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Kevin Duffy Jr., Assistant Public Defender, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham and Gina DiVito, Assistant State's Attorneys, of counsel), for the People. |
| | Charles P. Golbert, Public Guardian, of Chicago (Kass A. Plain and Carrie Fung, of counsel), for appellee. |