2024 IL App (1st) 221667

SIXTH DIVISION
February 9 , 2024

No. 1-22-1667

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| BERNARD BLACK and SAMUEL BLACK, as Trustees of the Trust for the Benefit of the Issue of Renata Black, | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | |
| v. | No. 2021 CH 02952 |
| DAVID H. BLACK, BENJAMIN H. BLACK, SAMUEL H. BLACK, SARAH H. BLACK, REBEKAH H. BLACK, DANIEL L. BLACK, JACOB L. BLACK, and BERNARD BLACK, as Beneficiaries of the Trust for the Benefit of the Issue of Renata Black, | The Honorable Michael T. Mullen, Judge, presiding. |
| Defendants. | |
| (Jeanette Goodwin, as Court-Appointed Successor Conservator for Joanne Black, and Anthony Dain as Trustee for the Supplemental Needs Trust for the Benefit of Joanne Black, dated December 19, 1997, Intervenors-Appellees). | |

PRESIDING JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.

Justices Hyman and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1   The underlying controversy in this case concerns a family dispute over the estate of Renata Black[1], who is the mother of plaintiff Bernard Black and the grandmother of plaintiff Samuel Black. This dispute has generated a number of other cases, including several in our state. Various family members are fighting over Renata's estate and over the money in trusts that she established.

¶ 2   However, the principal issue in this appeal concerns the much more limited question of when the intervenors and their attorney first learned of the judgment previously entered in this case. This prior judgment was a summary judgment for plaintiffs, entered on October 4, 2021. Seven months later, on May 27, 2022, the intervenors filed their petition, pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)), seeking to vacate the October 4, 2021, judgment.

¶ 3   On October 14, 2022, the same trial judge—who had previously issued the summary judgment order—held an evidentiary hearing regarding the intervenors' petition. The judge observed that it was "undisputed that there was no effort to alert the proposed intervenors to the existence of this case at any time prior to October 4th, 2021," which was the date that summary judgment had been entered. Plaintiffs argued that the intervenors had notice on November 2, 2021, as well as on December 29, 2021, while the intervenors asserted that they first learned of this case on March 2, 2022. After hearing the attorneys for both sides testify as witnesses, the trial court found that "the proposed intervenors did not have actual [n]otice of the existence of this case, nor the judgment in this case, until March 2nd, 2022." After making this factual finding, the trial court asked if the parties wanted a further evidentiary hearing on

---

[1]Since a number of people involved in this dispute share the last name of "Black," we will mention them once with their full names and refer to them thereafter by their first names.

the issue of whether the intervenors were necessary parties, and neither side did. The court then found that the intervenors were necessary parties and vacated the prior judgment. Plaintiffs filed a notice of appeal[2] on November 3, 2022, and this appeal followed. For the following reasons, we affirm.

¶ 4                                    BACKGROUND

¶ 5                                   I. The Complaint

¶ 6          On June 17, 2021, plaintiffs filed a complaint for declaratory judgment and other relief, that made the following factual allegations:

¶ 7          Bernard and Joanne Black are siblings and the only children of Renata. During most of her life, Joanne has suffered from severe mental illness. In 1997, Renata's will provided for her estate to be divided between two trusts, with two-thirds of her estate going to a "Supplemental Needs Trust" (SNT) for Joanne's benefit and one-third going to the "Issue Trust" for the benefit of Bernard and his children. Bernard was named executor.

¶ 8          The bulk of Renata's assets consisted of several investment accounts with Vanguard that, at the time of Renata's death in 2012, were worth approximately $3 million. The complaint states that, "[s]hortly after Renata's death, it was discovered that shortly before she died, the 'payable on death' ('POD') beneficiary designation on her principal Vanguard accounts was changed to make Joanne the beneficiary of 95% of these accounts, with the remaining 5% going to Bernard's five older children *** (the 'POD Designations')."[3]

---

[2]The notice of appeal states that the trial court's order occurred on October 17, 2022. Several days after the trial court's oral pronouncement from the bench, it issued a short written order on October 17, 2022. The oral pronouncement is the controlling order of the court. See *In re Mar. S.*, 2023 IL App (1st) 231349, ¶ 37.

[3]The complaint uses the word "shortly," without alleging when, and the phrase "it was discovered," without alleging who discovered.

¶ 9        If effective, the POD change would convey 95% of the funds directly to Joanne, leaving both the SNT and the Issue Trust with a small fraction of the money. Bernard and other unnamed family members decided that "the most effective way to protect Joanne against Joanne's own incapacity and mental issues" and "to implement Renata's long-standing estate plan" was for all the POD beneficiaries "to disclaim their entitlement to receive the Vanguard account proceeds so that the assets of those accounts could pass through Renata's estate." To further this plan, Bernard petitioned the Denver Probate Court in Colorado, where Joanne was then residing, to be appointed Joanne's conservator, and that was done in December 2012. As conservator, Bernard disclaimed Joanne's interest in Renata's Vanguard accounts. The complaint stated that "Bernard required" his five older children to execute their own disclaimers, which they did. After the disclaimers were executed, the Vanguard assets went into Renata's estate, and her estate was distributed according to her will, with two-thirds going to the SNT and one-third going to the Issue Trust.

¶ 10        In 2017, the Denver Probate Court appointed Jeanette Goodwin as successor conservator of Joanne. The complaint alleges that this occurred despite the fact that Joanne moved to New York and was deemed competent in 2016 by a New York court.

¶ 11        The complaint stated that the point of this lawsuit was to guard against the actions "threatened" by the people who are now the intervenors in this appeal. The complaint alleged that "various persons, including [intervenor] Anthony Dain, a relative of the Black family and a former trustee of the Issue Trust, [intervenor] Goodwin, and Joanne's court-appointed counsel, have threatened to take actions to try to have the [Denver Probate Court] declare [Bernard's] Disclaimer invalid so that Goodwin can, among other things, try to claw back assets from the Issue Trust to place them under her control." As a result, the one-count

complaint sought a declaratory judgment that the disclaimer executed by Bernard was valid and irrevocable.[4]

¶ 12                                    II. Summary Judgment

¶ 13          On September 10, 2021, plaintiffs filed both a motion to default all the defendants that they had named in the case and a motion for summary judgment. The default motion stated that "[t]he 60-day period for responding to the complaint ha[d] passed for all defendants and none ha[d] appeared or responded to the complaint." No response to plaintiffs' motions appears in the appellate record. On October 4, 2021, the trial court entered a short one-paragraph written order granting plaintiffs' motion for summary judgment against all the then-named defendants and stating that the disclaimer executed by Bernard on behalf of Joanne was "valid and irrevocable." The order noted that the motion for default was withdrawn. The order stated that it was a final order and directed plaintiffs' counsel, Earl S. Grayson, to "provide a copy of this Order to all parties."

¶ 14                                III. The Intervenors' Petitions

¶ 15          Eight months later, on May 27, 2022, the intervenors, by their counsel Peter Stasiewicz, filed petitions to intervene and to vacate. The petition to intervene sought leave to intervene as a matter of right, pursuant to section 2-408(a) (735 ILCS 5/2-408(a) (West 2022)) or, in the alternative, by permission, pursuant to section 2-408(b)(2) (735 ILCS 5/2-408(b)(2) (West 2022)). The petition to intervene alleged that the intervenors were necessary parties and that the petition was timely filed because the intervenors first "discover[ed] the existence of this case" on March 2, 2022. Similarly, the petition to vacate, which was filed pursuant to section

_____

[4]The complaint was signed by attorney Brad Grayson, one of the witnesses who would later testify at the evidentiary hearing from which this appeal was taken.

2-1401 (735 ILCS 5/2-1401 (West 2022)), alleged that the judgment was void for failure to name necessary parties and that there was no undue delay in their filing of the petition since they did not learn of the case until March 2, 2022. As the trial court later observed, the timeliness dispute was over a difference of about four months, namely whether the intervenors learned of the case on March 2, 2022, as they claimed, or four months earlier, on November 2, 2021, as plaintiffs claimed.

¶ 16    After briefing was complete, the trial court held an evidentiary hearing on October 14, 2022. It was a bifurcated proceeding, with the trial court considering first the petition to intervene and the timeliness issue and considering second the petition to vacate and the necessary party issue. The intervenors' counsel, Stasiewicz, testified first, in the form of a 10-page narrative. No counsel asked him questions to enter his direct testimony. Instead, he testified to the timeline as he remembered it, and then opposing counsel, Grayson, received an opportunity to cross-examine him.

¶ 17    Stasiewicz testified that, in a phone call with Grayson on November 1, 2021, the two attorneys were discussing "numerous other cases related to the same subject matter" that they were both involved in. At the conclusion of the call, Grayson mentioned that there were two additional cases: one concerning a loan and "the other one was a declaratory judgment case relating to, well, the status of a disclaimer that had been made by Bernard Black many years ago." However, Grayson "did not provide case captions or case numbers or really any specifics." When Stasiewicz got off the phone, Stasiewicz "immediately looked at the Cook County Clerk's electronic docket system to see if he could locate these cases and *** was successful in locating a new loan case. But he could not find any other case "that involved any kind of declaratory action."

¶ 18      Since Stasiewicz could not find the declaratory action in the court system, he e-mailed Grayson the next morning asking for "the case numbers and the court for the case." Grayson had not said that the declaratory action was in Cook County or that Grayson was the counsel on the case. Stasiewicz never received a response from Grayson. Stasiewicz also e-mailed the counsel "for Chase asking if anybody was aware of any declaratory action." Counsel for Chase responded that same day and said, "that they were not aware of anything along those lines."

¶ 19      In December 2021, Stasiewicz's clients were "served with a separate declaratory action relating to [another trust] *** at issue between the parties," and Stasiewicz was asked if his clients would provide a waiver of service of summons. When Stasiewicz received that case, he thought " 'Aha, now there's the declaratory action about the disclaimer.' " Stasiewicz assumed that this was the case that Grayson had mentioned on the phone.

¶ 20      Also in December 2021, Stasiewicz received from Grayson a motion for leave to amend another case. Stasiewicz did not review the motion right away because he received it during the holidays, but he did review it in early January. Stasiewicz reviewed it to determine if the relief that the other side was seeking had changed, and he found that, while "the relief sought in the prayer for relief was written in different language," the relief sought was "essentially the same relief." The "filing overall" was 133 pages, "mostly [consisting] of exhibits [Stasiewicz] had seen many times before." Stasiewicz was "not looking for" another prior case, "because [he] did not believe one existed." Although there was a reference to this case, Stasiewicz "simply did not realize" that the case that he had signed a waiver for was "separate" from yet another declaratory judgment case and "that there were separate actions."

¶ 21      Stasiewicz testified that the first time that he discovered this case was in March 2022, when the parties issued another status report in another pending case that listed each case by

caption and case number. Stasiewicz reviewed the case file, talked to his client, and filed the petitions at issue in late May 2022.

¶ 22    On cross-examination, Grayson asked whether he had told Stasiewicz during their November 1, 2021, phone call that a judgment had been entered declaring Bernard's disclaimer valid and irrevocable. Stasiewicz replied: "[Y]ou certainly didn't tell me the case number, and I know that you didn't tell me—you didn't inform me of the judgment." In that call, Stasiewicz "believed that, you know, you might have been telling me things you just were aware of from other—other sources."

¶ 23    On cross-examination Stasiewicz acknowledged that, on December 29, 2021, Grayson served him with a motion for leave to file an amended counterclaim in another case. Grayson then read into the record paragraph 43 of the amended counterclaim, which stated:

> "The Circuit Court of Cook County, Illinois, in litigation concerning the IT [Issues Trust], has determined that [Bernard's] Disclaimer is valid and irrevocable. A copy of the Order declaring the Disclaimer valid and irrevocable is attached hereto as Exhibit C."

Stasiewicz did not dispute that the order in the case at bar, entered by the trial judge on October 4, 2021, was attached as an "Exhibit C." As Stasiewicz recalled, the motion with all its attachments was over a hundred pages long.

¶ 24    Next, Grayson testified, with a colleague of his asking him questions to put in his direct testimony. Grayson testified that, because of the number of cases involving this family dispute, he communicates with Stasiewicz "[v]ery regularly by email" with "telephone calls from time to time." Grayson testified that, during their phone conversation on November 1, 2021, Grayson "mentioned to [Stasiewicz] that we had obtained a declaratory judgment finding that

the disclaimer was valid and irrevocable"—thereby creating a direct credibility dispute with Stasiewicz's testimony.[5] Plaintiffs then admitted into evidence, without objection, an e-mail from Stasiewicz on November 2, 2021, the day after their phone conversation. The e-mail, which was marked as exhibit 1, stated:

> "From: Peter Stasiewicz [e-mail address]
> Sent: Tuesday, November 2, 2021 11:05 a.m.
> To: Brad S. Grayson
> Subject: Declaratory judgment
>
> Brad,
>
> Do you have the case number and court of the declaratory case you mentioned yesterday regarding the disclaimers? If so, could you please pass it along.
>
> Regards,
> Pete"

¶ 25    Plaintiffs also admitted into evidence, as exhibit 2, the motion for leave to file an amended counterclaim in another case, which had been discussed during Stasiewicz's cross-examination. After its admission, the trial court observed that, although the amended counterclaim referred to a solitary exhibit C, there were actually two documents labeled "Exhibit C" attached. The trial court noted that the exhibit C—which the court had found first—appeared at page 98 of the 133-page document. When the court asked Grayson if this exhibit C, at page 98, was the judgment that the court had entered, Grayson agreed: "No, it's not."[6] In this other exhibit C, dated November 7, 2012, Rebekah Black acknowledged that she

---

[5]Grayson reiterated this point later in his testimony, stating: "I did mention to him the judgment that was entered in this case declaring the disclaimer that is at the center of a lot of this litigation valid and irrevocable."

[6]At the evidentiary hearing, the amended counterclaim was admitted into evidence as exhibit 2, and all the exhibits were attached to the end of the transcript. However, the exhibit 2 that appears after the transcript in the appellate record is one page long and is a motion seeking to file the exhibit under seal. However, the document appears elsewhere in the appellate record.

had previously given Vanguard a disclaimer, that her disclaimer was irrevocable, and that she would indemnify Vanguard if Vanguard suffered any loss as a result of its reliance on her disclaimer. The exhibit C that is the October 4, 2021, judgment in this case appears on page 66 of the 133-page document.

¶ 26　　　　　When the trial court asked Grayson why he would file a document with multiple exhibits labeled C attached, Grayson explained that he had attached a number of other pleadings that, in turn, had exhibits attached to them, with letters already on them. Grayson admitted that he did not "anticipate that there would be an Exhibit C to the complaint and then an Exhibit C" to the counterclaim. The court responded: "I always advise attorneys to use numbers when marking. But there are two Exhibit C's attached, and I'm taking note of that."

¶ 27　　　　　On cross-examination, Grayson acknowledged that he did not provide any notice to Stasiewicz or Stasiewicz's clients when Grayson filed this case in June 2021 or when Grayson obtained a judgment on October 4, 2021. Grayson testified that he had looked to see if he had responded to Stasiewicz's November 2, 2021, e-mail, but he could not find any response. When Stasiewicz asked if Grayson had "provide[d] any correction" when Stasiewicz "characterized it as a declaratory case instead of a case that had already gone to judgment," Grayson answered: "I did not." Grayson asserted that he had done a search on "the Cook County Clerk site" for Bernard Black and this case came up, so he believed that Stasiewicz could have found the case in November 2021. However, Grayson admitted that he had done his search recently and that he did not know that the site had changed. Stasiewicz's last question was, "Other than the fact that you assumed I read [the amended counterclaim] and understood there was a case pending, do you have any other basis for calling me a liar?" Grayson responded: "No."

¶ 28    After listening to arguments by both sides, the trial court made its finding on the timeliness issue. The trial court stated that, after considering the credibility of the witnesses, as well as all the exhibits, the trial court found, first, that "[i]t's clearly undisputed that there was no effort to alert the proposed intervenors to the existence of this case at any time prior" to the entry of judgment in this case on October, 4, 2021. Further, the court found that "the proposed intervenors did not have actual [n]otice of the existence of this case, nor the judgment in this case, until March 2nd, 2022." The court observed that the petition to intervene was filed on May 27, 2022, "which was approximately three months subsequent to actual notice." The court then concluded that the petition "was timely filed" after receipt of notice.

¶ 29    After finding a timely filing as required by statute, the trial court granted the petition to intervene as of right, pursuant to section 2-408(a) of the Code (735 ILCS 5/2-408(a) (West 2022)). In granting the intervention as of right, the court found that the existing parties did not adequately represent the interest of the intervenors "due to the clearly adverse interests of the parties." In addition, the trial court found that, if the intervenors had failed to establish intervention as of right, the court would have granted them a permissive intervention, pursuant to section 2-408(b) (735 ILCS 5/2-408(b) (West 2022)).

¶ 30    After making these findings, the trial court asked the parties if they wanted an evidentiary hearing regarding the section 2-1401 petition, and they did not. The trial court agreed that a further evidentiary hearing was not needed. The trial court then found that the October 4, 2021, "judgment is void for the failure to join a necessary party, here being 'parties,' in the plural." The trial court found the intervenors to be necessary parties because the subject matter of the suit was the validity of Bernard's disclaimer, the intervenors would be affected by any action taken by the court regarding that disclaimer, and the presence of the intervenors

would allow the court to completely resolve the underlying controversy. In finding that the intervenors were necessary parties, the trial court observed that "they are even named in the Complaint, as having an[ ] adverse interest to the [p]laintiffs." The court concluded that "it would be unfair, unjust and outright unconscionable" to allow its prior judgment to stand.

¶ 31    On October 17, 2022, the trial court entered a short written order setting forth a future schedule for the case and stating, among other things, that the petitions to intervene and to vacate were granted for the reasons stated on the record in open court. On November 3, 2022, plaintiffs filed a notice of appeal in which they appeal the "Order dated October 17, 2022, granting Intervenors' Section 2-1401 petition to vacate the judgment and request that the Appellate Court reverse the Circuit Court's October 17, 2022 order and reinstate the Circuit Court's judgment entered on October 4, 2021." This appeal followed.

¶ 32                                    ANALYSIS

¶ 33                        I. Jurisdiction and Standard of Review

¶ 34    Plaintiffs assert, and the intervenors do not dispute, that this court has jurisdiction to hear this appeal pursuant to Illinois Supreme Court Rule 304(b)(3) (eff. March 8, 2016), which permits appeals from "[a] judgment or order granting or denying any of the relief prayed in a petition under section 2-1401 of the Code of Civil Procedure."

¶ 35    The parties also agree that we review *de novo* the issue of whether the judgment was void due to plaintiffs' failure to join necessary parties but that we review only for an abuse of discretion the more fact-dependent question of the intervenors' diligence and timeliness in filing these petitions. In support, both parties cite the Illinois Supreme Court case of *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶¶ 47-51.

¶ 36                            II. Statutes at Issue

¶ 37    The intervenors filed both a petition to vacate under section 2-1401 and a petition to intervene under section 2-408. Section 2-1401 offers a possible route for relief from "final orders and judgments," when the 30-day period for taking an appeal has already passed. 735 ILCS 5/2-1401(a) (West 2022). Section 2-1401 abolished writs of error *coram nobis* and *vobis* and bills of review and proclaimed that "[a]ll relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings" under this section. 735 ILCS 5/2-1401(a) (West 2022). A petition under section 2-1401 must be (1) filed in the same proceeding in which the challenged order or judgment was entered, (2) supported by an affidavit or other appropriate proof, and (3) filed no later than 2 years after the challenged order or judgment was entered. 735 ILCS 5/2-1401(b), (c) (West 2022). In the case at bar, the intervenors' petition to vacate met these threshold requirements, in that it was (1) filed in the same proceeding, (2) supported by various exhibits, (3) and filed more than 30 days, but less than 2 years, after the challenged order, as required.

¶ 38    The intervenors also filed a petition to intervene, in which they sought to intervene as of right or, alternatively, by permission. Section 2-408(a) of the Code of Civil Procedure governs when a party may intervene as of right:

"Upon *timely* application anyone shall be permitted as of right to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other

13

disposition of property in the custody or subject to the control or disposition of the court or a court officer." (Emphasis added.) 735 ILCS 5/2-408(a) (West 2022).

If they were not allowed to intervene as of right, the intervenors sought, in the alternative, permissive intervention, which is up to the discretion of the trial court. Subsection (b) of section 408 provides, in relevant part: "Upon *timely* application anyone may in the discretion of the court be permitted to intervene in an action *** when an applicant's claim or defense and the main action have a question of law or fact in common." (Emphasis added.) 735 ILCS 5/2-408(b)(2) (West 2022). Both subsections regarding intervention require a "timely application." 735 ILCS 5/2-408(a), (b) (West 2022).

¶ 39                                      III. Timeliness

¶ 40        Plaintiffs argue that the trial court abused its discretion in finding that the intervenors were timely in filing their petitions. An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it. *Doe v. Readey*, 2023 IL App (1st) 230867, ¶ 34.

¶ 41        Plaintiffs argue that the intervenors' filing in May 2022 was unreasonable, because the intervenors had allegedly been informed of the judgment months earlier, on both November 2, 2021, and December 29, 2021. First, plaintiffs argue that the intervenors were informed of the judgment during a phone call on November 1, 2021, between plaintiffs' attorney and the intervenors' attorney. With respect to this phone call, the trial court was faced with a straightforward credibility dispute about whether plaintiffs' attorney did or did not inform the intervenors' attorney of the judgment during this call. After listening to the testimony from both parties to the phone call, the court resolved this dispute in favor of the intervenors. In cases where findings of fact are dependent on the credibility of witnesses, it is particularly true

that a reviewing court will defer to the trial court, which was able to listen to and observe the witnesses firsthand. *Soucek v. Breath of Life Professional Services, NFP*, 2021 IL App (1st) 210413, ¶ 79. Given Stasiewicz's testimony on point, we cannot find an abuse of discretion in this factual finding.

¶ 42    Next, plaintiffs argue that, even if the call did not provide actual notice, it still provided constructive notice, because the intervenors' attorney knew enough to immediately conduct a search in the court system, and that it strains credulity that he could not find it. However, the fact that he could not find it is evidenced by the fact that he sent an e-mail the next day to plaintiffs' counsel asking for the case name and number. While plaintiffs' counsel testified that he had found the case through a similar court search, plaintiffs' counsel admitted that he had done the search only recently and that he was unaware that the system had changed. Again, the trial court apparently resolved this credibility dispute in favor of the intervenors, and we cannot find this to be an abuse of discretion in light of the supporting e-mail and testimony in the record.

¶ 43    Second, plaintiffs argue that the intervenors were again informed of the judgment when they were served with an over-100-page motion in another case at the end of December 2021 that referred to and attached the judgment. However, as the trial court noted, the lengthy document stated that the judgment was attached as exhibit C, and there were two documents labeled exhibit C attached. The phrase "looking for a needle in a haystack" comes to mind. While plaintiffs argue that the document provided constructive notice, the intervenors' attorney testified that he was not reviewing a motion to amend a counterclaim in another case with the idea that he should be looking for an additional action, because he did not know there was one. The intervenors' counsel testified that, when he was served with a declaratory action, he went

" 'Aha, now there's the declaratory action about the disclaimer' " and that he had no reason to think that there were two separate declaratory actions about Bernard's disclaimer.

¶ 44    After reviewing the testimony and the exhibits presented to the trial court, we cannot find that the trial court abused its discretion in finding that the intervenors did not have notice until March 2022. Thus, we do not find persuasive plaintiffs' timeliness arguments.

¶ 45                              IV. Necessary Parties

¶ 46    Normally, a section 2-1401 "petition must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Warren*, 2015 IL 117783, ¶¶ 37, 51.[7] However, "a section 2-1401 petition seeking to vacate a void judgment, a purely legal issue, does not need to establish a meritorious defense or satisfy due diligence requirements." *Warren*, 2015 IL 117783, ¶ 48.

¶ 47    The intervenors argue that the October 4, 2021, judgment was void for failure to join necessary parties. "An order entered without jurisdiction over a necessary party will be void." *Certain Underwriters at Lloyd's London v. The Burlington Insurance Co.*, 2015 IL App (1st) 141408, ¶ 15 (citing *Zurich Insurance Co. v. Baxter International, Inc.*, 275 Ill. App. 3d 30, 37 (1995), *aff'd as modified*, 173 Ill. 2d 235 (1996)). The failure to join a necessary party may be raised at any time, by the parties or by the trial court or by the appellate court *sua sponte*. *Certain Underwriters*, 2015 IL App (1st) 141408, ¶ 15.

_____

[7]The "quantum of proof necessary to sustain a section 2-1401 petition is a preponderance of the evidence." *Warren*, 2015 IL 117783, ¶ 37.

¶ 48    In response, plaintiffs argue that the intervenors were not necessary parties, as the trial court found. " 'A necessary party is one whose participation is required to (1) protect its interest in the subject matter of the controversy which would be materially affected by a judgment entered in its absence; (2) reach a decision protecting the interests of the parties already before the court; or (3) allow the court to completely resolve the controversy.' " *Certain Underwriters*, 2015 IL App (1st) 141408, ¶ 15 (quoting *Zurich Insurance*, 275 Ill. App. 3d at 37).

¶ 49    The subject matter of the case at bar is the validity and possible revocability of Bernard's disclaimer. The trial court found that the intervenors' participation was required in order to protect their interests in a declaration about the validity, or invalidity, of the disclaimer executed by Bernard on Joanne's behalf. In addition, their presence would allow the court to completely resolve the controversy. It is hard for plaintiffs to argue that the intervenors are not needed to completely resolve the controversy, when plaintiffs themselves named them in the complaint and explained that the intervenors were the reason for the suit in the first place. The complaint stated that the point of the action was to guard against the actions "threatened" by the people who later became the intervenors. The complaint alleged that "various persons, including [intervenor] Anthony Dain, a relative of the Black family and a former trustee of the Issue Trust, [intervenor] Goodwin, and Joanne's court-appointed counsel, have threatened to take actions to try to have the [Denver Probate Court] declare the Disclaimer invalid so that Goodwin can, among other things, try to claw back assets from the Issue Trust to place them under her control." Toward the end of their appellate brief, plaintiffs concede, as they must, that the intervenors might have an arguable basis if Bernard's disclaimer "could be reversed or invalidated"—which is the subject matter of this suit. Having examined the record, we cannot

find that the trial court erred in finding that they are necessary parties and that, therefore, the October 4, 2021, judgment is void.

¶ 50                                                   CONCLUSION

¶ 51        For the foregoing reasons, we cannot find that the trial judge abused his discretion in finding that the intervenors' petitions were timely filed or that he erred in vacating his own prior order on the ground that necessary parties were missing.

¶ 52        Affirmed.

***Black v. Black*, 2024 IL App (1st) 221667**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021-CH-02952; the Hon. Michael T. Mullen, Judge, presiding. |
| **Attorneys for Appellant:** | Brad S. Grayson, Benjamin N. Feder, and Sarah M. Freund, of Straus Malk & Feder LLP, of Northbrook, for appellants. |
| **Attorneys for Appellee:** | Peter Stasiewicz, of Arcturus Law Firm, of Chicago, for appellees. |